A05A2350. GOODALL v. THE STATE.
(627 SE2d 183)

SMITH, Presiding Judge.

Samuel Howard Goodall was indicted by a Fayette County grand jury for the offenses of kidnapping with bodily injury, aggravated assault with intent to rape, aggravated assault with a deadly weapon, and aggravated sexual battery. A jury found him not guilty of kidnapping and guilty on the remaining charges. Following the denial of

his amended motion for new trial,[1] he appeals, raising the general grounds and contending that his trial counsel provided ineffective assistance and that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of aggravated assault with intent to rape. We find no merit in these contentions and affirm.

The record shows that the charges arose from a violent incident between Goodall and the victim, his former girlfriend, that took place at the victim's home in July 2002. It is undisputed that they fought and that the victim was badly bruised and cut. Goodall, who was a Union City police officer, testified that the victim had been following him, calling him "left and right," even though he had broken off their relationship and was dating another woman. Goodall testified that he decided to confront his ex-girlfriend and called her so they could talk. They made arrangements to meet at her house. She invited him in, they talked, and they agreed their relationship was over.

Goodall testified that when he stood up to leave, however, the victim grabbed his hand and walked him to the bedroom, where she pulled down her shorts and attempted to seduce him. When he told her it was "not going to happen," she grabbed him in the groin. When she would not let go, he slapped her and again told her to release her grip. He hit her on the forehead "more than once," cutting her with his ring. As he tried to move toward the door she jumped on his back with her arms around his neck, and he "flipped" her to get her off his back. When he did so, she hit the wall hard and fell to the floor. When he again tried to leave, she grabbed his leg. He then realized that a "belly pack" holding his personal pistol had been pulled off and was on the floor under the victim. He held the victim by her neck while he separated her from the gun. He picked up the belly pack and told her to call 911 because it was obvious that help was needed. According to Goodall, the victim kept urging him to leave because he would "get in trouble." He did leave, and he went home, where he showered, changed clothes, and called a lawyer.

The victim described the same incident completely differently. She testified that when the incident took place in July 2002, she was in a relationship with another man, who later became her husband. That morning, Goodall called her saying he needed to speak with her. They had no plans to meet, but when she arrived home he was waiting for her. When she entered the house to get him some water, he followed her into the living room. According to the victim, he then pulled her by the wrist down the hall to her bedroom as she tugged his

---

[1] The trial court granted Goodall's motion for leave to file an out-of-time motion for new trial after his trial counsel withdrew and no motion was filed by his new appointed attorney. A third attorney was appointed, and that lawyer filed an out-of-time motion for new trial and this appeal.

hand to get away. He "cornered" her and attempted to remove her shorts as she protested. After he "yanked" off her shorts and her underwear and held her feet while he removed his own shorts, he grabbed her head and began "jamming it in his crotch." She remembered Goodall slapping her face on both sides as she begged him to stop. The victim testified that he then reached for his belly pack, which held his personal gun, pointed the weapon at her, and told her that "he could put a bullet in my head and nobody would ever know." She asked him to put down the gun, and he did so. But he then lifted her up over his head and threw her against the wall, causing both her knees to break the drywall. As she lay on her back on the floor he began choking her with his hands. She was screaming, and he punched her in the forehead, causing "a large gash." When he started to choke her again, she picked up one of her shoes and threw it at him, hitting him in the face.

The victim testified that at that point, Goodall stood up, questioned his own behavior, and wanted to help her. She declined his help and asked him to leave. She tried to call 911, but Goodall snatched the phone away and cautioned her not to say he was involved or he would lose his job. She called 911 anyway, and Goodall left. The victim told the 911 dispatcher that at one point, she felt like Goodall "tried to stick his entire hand inside of" her. The recording of that call was entered into evidence.

1. In two related enumerations, Goodall challenges the sufficiency of the evidence to support his conviction for the offense of aggravated assault with intent to rape.

(a) Goodall first asserts that the trial court erred in denying his motion for a directed verdict of acquittal on the charge of aggravated assault with intent to rape because the State did not prove rape or carnal knowledge, an essential element of the crime. He argues that to prove the essential elements of the crime, the State was required to present evidence that he penetrated or attempted to penetrate the victim's vagina with his penis, and no such evidence was presented.

Goodall misunderstands the elements of the crime, which are simply: (a) an assault against the victim; and (b) aggravation of that assault by an intention to rape the victim. *Bissell v. State*, 153 Ga. App. 564 (1) (266 SE2d 238) (1980). The fact that Goodall did not have carnal knowledge of the victim is immaterial. Because an assault is an attempted battery, a "substantial step" toward committing a battery must be made before an assault exists. Id. The State was therefore required to prove beyond a reasonable doubt that Goodall took a "substantial step" toward committing a battery on the victim and that he did so with the intent to rape her.

Intent to rape is a jury question. It need not be declared expressly but may be inferred by the jury from the circumstances of the case. As

a general rule, proof of intent is shown by circumstantial evidence. *Butler v. State*, 194 Ga. App. 895, 897 (2) (392 SE2d 324) (1990). No requirement exists that the State show a "substantial step" toward committing rape. "If there is a substantial step toward the rape itself, the crime would then become attempted rape. [Cits.]" *Bissell*, supra. The evidence presented by the State, including jamming of the victim's head into his groin and tearing off her shorts and underwear, and the victim's testimony that it felt to her like he "tried to stick his entire hand inside of" her, were a reasonable and sufficient basis for the jury to conclude that Goodall had the required intent. The trial court therefore properly denied Goodall's motion for a directed verdict of acquittal.

(b) Goodall also argues that the trial court should have granted his motion for new trial. He contends this is simply a case in which the testimony of the defendant is pitted against that of the victim, and the evidence therefore did not satisfy the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). We do not agree.

On appeal Goodall

> no longer enjoys a presumption of innocence, and we construe the evidence, and all reasonable inferences therefrom, in a light most favorable to the jury's verdict. We neither weigh the evidence nor assess witness credibility, but merely ensure that the evidence was sufficient to enable a rational trier of fact to find each element of the crime charged beyond a reasonable doubt.

(Citations and footnotes omitted.) *Alexander v. State*, 264 Ga. App. 251 (1) (590 SE2d 233) (2003). Conflicts in the testimony of two witnesses do not make the evidence insufficient to support the verdict. Id.

Even though the evidence was in conflict, it amply supported the jury's verdict. The testimony of the victim alone would have been sufficient to enable a rational trier of fact to find Goodall guilty of aggravated assault with intent to rape. *Sims v. State*, 275 Ga. App. 836, 838 (1) (621 SE2d 869) (2005). The State also introduced photographs of the victim's badly bruised body and a tape of the victim's 911 call. This evidence was sufficient under the standard set forth in *Jackson,* supra.

2. In the remaining enumeration, Goodall maintains that his trial counsel provided ineffective assistance of counsel. Under *Strickland v. Washington,* 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), to prove ineffective assistance Goodall was required to show both that counsel's performance was deficient and that the deficient

performance of his counsel prejudiced his defense. *King v. State*, 259 Ga. App. 589, 590 (2) (578 SE2d 176) (2003). A strong presumption exists that trial counsel's performance was effective. *Thomas v. State*, 273 Ga. App. 357, 361 (4) (615 SE2d 196) (2005). We must affirm a trial court's ruling on a claim of ineffective assistance of counsel if any evidence supports it. Id.

Goodall alleges three ways in which his trial counsel was ineffective:

(a) Trial counsel failed to challenge or object to the racial composition of the jury panel. Goodall, who is African-American, asserts that African-Americans were under-represented in the panel, and that no African-Americans were on the jury that decided his case. His trial counsel testified at the hearing on the motion for new trial that she did not recall how many African-Americans were on the panel or the jury picked, but she did not object because in her experience, it "was a pretty typical jury pool" for Fayette County.

To support his contention, Goodall relies on documents attached to the transcript of the hearing on his motion for new trial. These include an "Order Certifying Jury Box," a statistical comparison of the percentages of "whites, blacks, men and women in the total population of the county aged eighteen (18) and over" and the traverse jury list from which Goodall's panel was selected, and a list of the names of the persons in the panel from which the jury was chosen. These exhibits fail to support Goodall's claim because they show no error in jury composition to which his trial counsel should have objected. Indeed, they show that the demographics of the traverse jury adequately mirror the demographics of Fayette County as a whole, and the list of jurors does not note each juror's race. To succeed on this claim, appellant must complete the record with information revealing the racial composition of the panel from which the jury was selected. *Harris v. State*, 186 Ga. App. 756, 757 (2) (368 SE2d 527) (1988). Goodall has not done so, and this contention has no merit.

(b) Trial counsel failed to subpoena telephone records that could have impeached the victim's testimony.[2] Trial counsel testified that she reviewed the cell phone records, and she feared that they "tended to actually support the theory of the prosecution." She feared the home telephone records would do the same, and she would have had to provide them to the State as well. This decision was a strategic one, and it is well established that "matters of reasonable trial strategy

---

[2] It is unclear how these records would have impeached the victim's testimony. Goodall asserts that the records would show that the victim was lying about calling him after they broke up, but the victim admitted that she did so and, in fact, tried to reconcile with him.

and tactics do not amount to ineffective assistance of counsel. [Cit.]" *Sweet v. State*, 278 Ga. 320, 324 (4) (602 SE2d 603) (2004).

(c) Trial counsel's decisions not to call Goodall's ex-wife or his next-door neighbor were also matters of strategy. Trial counsel testified that she interviewed Goodall's former wife and discovered that incidents of domestic violence had occurred in their marriage as well. She "thought that . . . would be particularly damning on cross-examination, even if it wasn't brought out during direct," because it "would show a pattern of violent behavior towards women." Trial counsel testified that she did subpoena Goodall's neighbor but decided not to call him because "he was difficult" and "started back pedaling when we called him to tell him to come." It was counsel's strategic decision not to call these witnesses, based upon reasonable fears that their testimony might well harm Goodall. Because Goodall did not meet his burden of showing that his counsel's performance was deficient, the trial court did not err in finding that trial counsel did not provide him with ineffective assistance.

*Judgment affirmed. Ellington and Adams, JJ., concur.*

DECIDED FEBRUARY 14, 2006.

*George H. Weldon,* for appellant.

*Scott L. Ballard, District Attorney, Cindy L. Spindler, Assistant District Attorney,* for appellee.