699 S.E.2d 887 (2010)
MATTOX
v.
The STATE.
No. A10A1794.
Court of Appeals of Georgia.
August 18, 2010.
*889 Donna A. Seagraves, for appellant.
Kenneth W. Mauldin, Dist. Atty., Leslie S. Jones, Asst. Dist. Atty., for appellee.
BLACKBURN, Senior Appellate Judge.
Following a jury trial Willie James Mattox was convicted on one count of armed robbery,[1] one count of aggravated sodomy,[2] one count of sexual battery,[3] two counts of burglary,[4] and two counts of aggravated assault.[5] He appeals his convictions and the denial of his motion for new trial, challenging the sufficiency of the evidence supporting his conviction of aggravated assault with intent to rape, and arguing that the trial court erred by denying his plea in bar of former jeopardy and by failing to find that his trial counsel rendered ineffective assistance. For the reasons set forth below, we affirm.
"On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict, and [Mattox] no longer enjoys a presumption of innocence." (Punctuation omitted.) Dennis v. State.[6] In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt. Jackson v. Virginia.[7]
So viewed, the record shows that late in the afternoon on June 26, 2004, C.C. finished her work at a resort at Lake Oconee and drove to Atlanta to meet her boyfriend, who worked as a musician, at a nightclub. Shortly *890 after midnight, she left the nightclub to drive back to her rental house in Athens, which she shared with her boyfriend. As she walked to where her car was parked, her boyfriend accompanied her and gave her an older wallet with more than $500 for her to keep while he was out of town with his band. C.C. put the wallet in her car's glove compartment and began her drive back to Athens. She arrived home around 1:15 a.m., removed her contact lenses, and went to sleep after making sure that all the house's doors were locked.
At some point not long before daylight, C.C. woke up to find Mattox, whom she did not know, standing over her bed. Without her glasses or her contact lenses on, C.C. believed at first that Mattox was her boyfriend who had decided to come home before going out of town. Consequently, she sat up and called out her boyfriend's name, but Mattox responded "no," told her to get down, and made her lie on her stomach. As C.C. turned over and Mattox straddled her, she saw that he was holding a knife and that he had covered his face with one of her bath towels. Mattox then removed C.C.'s underwear, told her that he was going to pleasure her, and began licking her genital and anal areas. During the assault, C.C. pleaded with Mattox to stop and told him that she would give him the money that was in her car if he would leave. After a few minutes, Mattox demanded the money that C.C. had mentioned and told her that she could go to her car to get it. C.C. got up, put on her glasses, and began to put on a bathrobe, but Mattox ordered her outside without clothes and threatened to violently sodomize her if she was lying about having money. With her glasses now on, C.C. could see that Mattox was only a few inches taller than her and that he was wearing a red t-shirt. While still holding the knife, Mattox followed C.C. out to her car and took the money from her boyfriend's wallet. Mattox then quickly walked away from the house toward a path leading to some railroad tracks, while shouting threats to C.C. that he would return. Once Mattox was a safe distance away, C.C. ran back inside her house and called the police.
When the police arrived, C.C. gave them a general description of her attacker, but she admitted that she was unable to see his face clearly because he had used a towel to conceal it. In searching the area where C.C. said her attacker was heading when he left her house, the police found one of C.C.'s towels stuffed into a storm drain and also found a recently discarded red t-shirt near the railroad tracks. Both items were collected and analyzed for hair samples that could be used for DNA testing. Meanwhile, another officer took C.C. to the police station where she was interviewed further about the attack and later was examined by a sexual assault nurse examiner. During the examination, the nurse swabbed the areas of C.C.'s body that her attacker had licked in order to collect samples of her attacker's DNA.
Over the course of the next two months, the police's investigation of the case led them to focus on Mattox as a prime suspect. On August 4, 2004, police located Mattox and met with him to question him about the attack. Mattox spoke with the police voluntarily, denied knowing anything about the incident, and allowed the police to swab his mouth for saliva samples so that his DNA could be analyzed. Several months later, the police received the results of the DNA analysis on Mattox's saliva samples, which matched the DNA from the saliva found during the nurse's examination of C.C. Shortly thereafter, Mattox again voluntarily met with police and again denied any involvement in the attack. A few days later, the police met with C.C. to have her view a photographic lineup of possible suspects. Although C.C. again admitted that she could not be completely sure because she had only seen her attacker's eyes during the incident, she nevertheless picked out Mattox's photograph as that of her attacker.
Subsequently, Mattox was arrested and indicted on one count of armed robbery, one count of aggravated sodomy, one count of sexual battery, two counts of burglary, one count of aggravated assault with intent to rape, and one count of aggravated assault with intent to rob. He was initially tried in January 2007; however, that trial ended in a mistrial, over Mattox's objection, after the *891 trial court determined that the jury was hopelessly deadlocked and could not reach a verdict. Consequently, Mattox filed a plea in bar of former jeopardy, which the trial court denied.
The retrial of Mattox's case took place a few months later. During the retrial, C.C. testified regarding the details of the attack, several police officers testified regarding their investigation of the incident, and the State presented the DNA evidence, indicating that Mattox was C.C.'s attacker. The State also presented similar transaction evidence, which showed that twenty years prior to the attack on C.C., Mattox was convicted on two charges of rape. In both of those cases, Mattox had attacked the victims at night inside their own homes. At the conclusion of the retrial, the jury found Mattox guilty on all counts. Subsequently, Mattox obtained new counsel and filed a motion for new trial, which included a claim of ineffective assistance of counsel. The trial court denied Mattox's motion after a hearing, and this appeal followed.
1. We first address Mattox's contention that the evidence was insufficient to support his conviction of aggravated assault with intent to rape. Specifically, he argues that the State failed to present evidence of his intent to rape C.C. We disagree.
"The crime of aggravated assault with intent to rape is complete when there is a substantial step toward a battery of the victim, i.e., an assault, coupled with an intent to rape." (Punctuation omitted.) De'Mon v. State.[8] See Goodall v. State.[9] "Intent to rape is a jury question. It need not be declared expressly but may be inferred by the jury from the circumstances of the case. As a general rule, proof of intent is shown by circumstantial evidence." Goodall, supra, 277 Ga.App. at 602-603(1)(a), 627 S.E.2d 183. See Butler v. State.[10] Furthermore, "[n]o requirement exists that the State show a `substantial step' toward committing rape. If there is a substantial step toward the rape itself, the crime would then become attempted rape." (Punctuation omitted.) Goodall, supra, 277 Ga.App. at 603(1)(a), 627 S.E.2d 183.
Here, the State presented evidence that Mattox removed C.C.'s underwear while on top of her in her bed and then licked her genital and anal areas. The evidence also showed that Mattox only stopped sexually assaulting C.C. after she pleaded with him and offered him money. Based on this evidence, the jury was authorized to infer that Mattox had the requisite intent to rape C.C. as charged and therefore was also authorized to find that Mattox was guilty of aggravated assault with intent to rape beyond a reasonable doubt. See Mobley v. State;[11]Goodall, supra, 277 Ga.App. at 603(1)(a), 627 S.E.2d 183; De'Mon, supra, 262 Ga.App. at 12(1), 584 S.E.2d 639.
2. Mattox contends that the trial court erred in denying his plea in bar of former jeopardy. Specifically, he argues that the trial court improperly declared a mistrial during jury deliberations in the first trial of this matter because no manifest necessity supported such a declaration. We disagree.
"The appellate standard of review of a grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the trial court's findings support its conclusion." (Punctuation omitted.) Leonard v. State.[12] In addition,
[r]etrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy where there is manifest necessity for declaring the mistrial. Where the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial. The determination as to whether *892 the jury is in fact hopelessly deadlocked is a matter somewhat in the discretion of the trial court.
(Punctuation omitted.) Id. at 668-669, 621 S.E.2d 599.
Here, the record supports the trial court's finding that the jury was hopelessly deadlocked. In Mattox's first trial, after the jury had been deliberating for several hours, it informed the trial court that it had taken several votes but that all of those votes were nearly evenly split between conviction and acquittal. The court directed the jury to continue its deliberations, but it expressed concern to the State's prosecutor and to Mattox's counsel that the jury was taking an inordinate amount of time to decide a case that had not taken long to present. A short time later, after the jury still had not reached a verdict, the court gave the pattern Allen charge[13] and told the jury to continue deliberating. Despite these instructions, an hour or so later, the jury once again sent the trial court a note indicating that it was deadlocked. At that point, the trial court questioned the jury's foreman as to whether any progress had been made, and the foreman responded that there had been no progress and that the jurors had become entrenched in their positions. Nevertheless, the court told the foreman to continue deliberations. After some more time had passed, the jury once again informed the court that it was deadlocked and that no progress had been made. The court then brought the jury into the courtroom and asked them collectively if a weekend recess would help their deliberations. The jurors universally responded that a recess would not help to break the deadlock. Consequently, the court declared a mistrial over Mattox's objection.
Mattox argues that the jury in his first trial only deliberated for approximately six hours, and thus no manifest necessity supported the trial court's declaration of a mistrial. However, "[t]he decisive factor is not the length of the deliberation, but the inability of the jury to agree on a verdict." (Punctuation omitted.) Rhodes v. State.[14] Here, the jury informed the court early in their deliberations that their vote was nearly evenly split between conviction and acquittal. In addition, at least three separate times, the jury also told the court that it was deadlocked and that further deliberations would not result in a verdict. The court even asked the jurors if reconvening after the weekend would help them reach a verdict, but none of them thought that it would. Given these circumstances, the evidence supported the trial court's determination that the jury was hopelessly deadlocked. See id.; Leonard, supra, 275 Ga.App. at 669, 621 S.E.2d 599. Accordingly, the trial court did not abuse its discretion in declaring a mistrial in Mattox's first trial.
3. Mattox contends that the trial court erred in failing to find that his trial counsel rendered ineffective assistance. Specifically, Mattox argues that his trial counsel performed deficiently by failing to interview witnesses and obtain evidence that would have corroborated Mattox's defense that his encounter with C.C. was consensual. This argument is without merit.
To demonstrate ineffective assistance of counsel under Strickland v. Washington,[15] "a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." Kurtz v. State.[16] "Making that showing requires that [Mattox] rebut the strong presumption that [his] lawyer's conduct falls within the wide range of reasonable professional assistance." Simpson v. State.[17] *893 "As a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Punctuation omitted.) Abernathy v. State.[18] "We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of the Strickland test unless clearly erroneous." Kurtz, supra, 287 Ga.App. at 825, 652 S.E.2d 858.
In his amended motion for new trial and on appeal, Mattox claimed that he and C.C. knew each other and that she had contacted him on the night in question in order to exchange sexual favors for drugs. Mattox further argued that his claims could have been corroborated by a female friend who had given him a ride to C.C.'s home that night, by a drug dealer who had seen C.C. and Mattox together on prior occasions, by a bartender at a bar who had seen them together, and by C.C.'s and his own mobile telephone records, which would have shown that they had contacted each other on the night of the incident.
At the hearing on Mattox's motion for new trial, Mattox's trial counsel acknowledged that Mattox had told him that his encounter with C.C. was consensual. However, counsel testified that he had tracked down the female friend who Mattox claimed had given him a ride to C.C.'s house on the night of the attack and that the friend denied doing so. Trial counsel also testified that his investigator showed Mattox's photograph to the employees of the bar where Mattox claimed he and C.C. had been seen together but that none of the employees recognized Mattox. Thus, as Mattox's claim that these two alleged witnesses could corroborate his defense "is not supported by the record, it necessarily provides no basis for a claim of error." Hill v. State.[19]
In addition, trial counsel testified that he attempted to locate the drug dealer who Mattox claimed could corroborate that Mattox and C.C. knew each other but that he was unable to do so because Mattox only gave him the dealer's first name and the name of the apartment complex where Mattox believed the drug dealer lived. Given Mattox's lack of sufficient information regarding this alleged witness's name or his whereabouts, trial counsel's failure to locate him did not constitute ineffective assistance. See Hernandez v. State[20] (trial counsel's failure to locate a witness due to insufficient information was not ineffective assistance); Ransom v. State[21] (counsel's inability to locate defendant's alibi witness did not amount to deficient performance).
With regard to C.C.'s mobile telephone records, trial counsel admitted that he did not attempt to obtain them. Trial counsel further testified that shortly before the initial trial in 2007, his investigator contacted Mattox's mobile telephone provider to determine if Mattox and C.C. had called each other on the night of the incident but was told that the relevant records were destroyed after six months. Mattox argues that his counsel's delay in attempting to obtain those telephone records amounted to deficient performance. However, his argument is without merit, as the record shows that Mattox was not arrested for the sexual assault of C.C. until more than six months after the incident occurred and therefore did not even meet with defense counsel until after those telephone records had already been destroyed. Thus, even if trial counsel had attempted to obtain those records on the same day that a representative of his office first met with Mattox, the effort would have been futile. Accordingly, trial counsel cannot be held ineffective for failing to obtain those mobile telephone records. See McIlwain v. State.[22]
Moreover, trial counsel testified that while he was aware from the beginning that Mattox claimed his encounter with C.C. *894 was consensual, after several discussions on trial strategy, he and Mattox agreed to pursue a defense that focused on C.C.'s inability to positively identify Mattox as her attacker. Indeed, trial counsel provided detailed testimony as to his rationale for pursuing such a defense. For instance, he noted that despite the fact that there was DNA evidence linking Mattox to the crime, no other physical evidence linked him to the assault and C.C. could not definitively do so. Trial counsel further noted that he felt justified in pursuing such a defense given the fact that the jury in Mattox's first trial, which had been unable to reach a verdict, had obviously not found the DNA evidence to be conclusive. Additionally, trial counsel testified that Mattox's initial denial to the police that he knew C.C. or that he had ever been to her house would have made pursuing a defense of consent more difficult. An "attorney's decisions on which witnesses to call, what evidence to introduce, how to conduct cross-examinations, and which defenses to pursue are matters of trial tactics that do not amount to ineffective assistance of counsel." Hood v. State.[23] See Abernathy, supra, 299 Ga.App. at 903(3), 685 S.E.2d 734. Accordingly, the trial court did not clearly err in finding that Mattox failed to show that his counsel rendered ineffective assistance.
Judgment affirmed.
BARNES, P.J., and Senior Appellate Judge MARION T. POPE, JR., concur.
NOTES
[1] OCGA § 16-8-41(a).
[2] OCGA § 16-6-2(a)(2).
[3] OCGA § 16-6-22.1(b).
[4] OCGA § 16-7-1 (a).
[5] OCGA § 16-5-21(a)(1).
[6] Dennis v. State, 294 Ga.App. 171, 669 S.E.2d 187 (2008).
[7] Jackson v. Virginia, 443 U.S. 307, 319(III)(B), 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[8] De'Mon v. State, 262 Ga.App. 10, 12(1), 584 S.E.2d 639 (2003).
[9] Goodall v. State, 277 Ga.App. 600, 602(1)(a), 627 S.E.2d 183 (2006).
[10] Butler v. State, 194 Ga.App. 895, 897(2), 392 S.E.2d 324 (1990).
[11] Mobley v. State, 279 Ga.App. 476, 478(1), 631 S.E.2d 491 (2006).
[12] Leonard v. State, 275 Ga.App. 667, 667-668, 621 S.E.2d 599 (2005).
[13] See Council of Superior Court Judges, Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.70.70 (4th ed. 2007).
[14] Rhodes v. State, 276 Ga.App. 692, 693, 624 S.E.2d 268 (2005).
[15] Strickland v. Washington, 466 U.S. 668, 687(III), 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
[16] Kurtz v. State, 287 Ga.App. 823, 825, 652 S.E.2d 858 (2007).
[17] Simpson v. State, 278 Ga. 336, 337(2), 602 S.E.2d 617 (2004).
[18] Abernathy v. State, 299 Ga.App. 897, 903(3), 685 S.E.2d 734 (2009).
[19] Hill v. State, 290 Ga.App. 140, 145(5)(d), 658 S.E.2d 863 (2008).
[20] Hernandez v. State, 303 Ga.App. 103, 105(2), 692 S.E.2d 712 (2010).
[21] Ransom v. State, 297 Ga.App. 902, 906(2)(a), 678 S.E.2d 574 (2009).
[22] McIlwain v. State, 287 Ga. 115, 118(5), 694 S.E.2d 657 (2010).
[23] Hood v. State, 292 Ga.App. 584, 585(1), 666 S.E.2d 674 (2008).