**SECOND DIVISION**
**BARNES, P. J.,**
**ADAMS and MCFADDEN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**May 31, 2012**

# In the Court of Appeals of Georgia

A12A0465. BROCKINGTON v. THE STATE.

BARNES, Presiding Judge.

A jury convicted Gerald Eugene Brockington of aggravated assault and aggravated battery, and the trial court sentenced him to serve an aggregate of 25 years in confinement followed by 15 years on probation. He contends on appeal that the trial court erred in imposing separate sentences for each count, arguing that the offenses merged as a matter of law and fact. He also asserts his trial counsel was ineffective for not objecting to certain testimony from two health care professionals. We find no error, and affirm the convictions.

Viewed in the light most favorable to the verdict, the evidence showed that the victim lived with Brockington, who became angry with her on December 25, 2008 because he did not like his Christmas presents. When she tried to leave, Brockington

jumped on her car and began hitting it with a hammer. The victim backed her car into the street but Brockington shoved the victim over, jumped into the drivers seat, and pulled the car back into the driveway. The couple went back inside and when the victim resisted going upstairs with him, Brockington struck her on her leg with the hammer. Her leg went numb and she could not get up but tried to comply with Brockington's demands. The victim remembered that as she crawled up the stairs, Brockington was behind her with the hammer. The next thing she remembered was seeing the shower floor, then being in her car dressed in different clothing, then talking to the police and being in the ambulance. Evidence technicians testified that someone apparently had attempted to clean the carpet on the landing of the stairs, but when they pulled it up, blood had soaked through the carpet pad beneath and into the wood flooring.

Meanwhile, Brockington's mother, who was present the whole time, had called 911 but Brockington grabbed the phone and hung up. The 911 operator called back and Brockington answered to say there was no problem, but the operator heard a voice in the background saying, "I can't get up," and dispatched the police. An officer responded to a possible domestic disturbance and found Brockington and the victim in her car in the driveway. Brockington got out and said the victim had fallen, but the

2

victim did not respond to the officer's questions about what had happened other than to say she had fallen, she was dizzy, her head hurt, and she wanted to go to the hospital.

An ambulance arrived and emergency personnel took the victim to the emergency room. She had bruises on her leg and a laceration on her head, and although initially she was alert, she was confused, and by the time the neurosurgeon on call saw her, she was comatose. The physician described the victim's injury as life-threatening, requiring immediate surgical intervention. He explained that her head had been damaged by a "focal impact" of significant force, consistent with a hammer blow, which caused the skull "to absorb a tremendous amount of kinetic energy that caused it to fracture into multiple pieces and be driven inward" into her brain. The skull fragments tore into the membrane surrounding her brain, causing bleeding and swelling. The surgeon removed the fragments, cleaned out the blood clot, cauterized the bleeding, and replaced the skull fragments, securing them in place with titanium plates and screws. He testified that this injury was not consistent with the victim having fallen up or down stairs.

The State introduced pictures of the victim's scars on her scalp, and the victim testified that she experienced continuing cognitive difficulties. The State presented

evidence that Brockington struck the victim in her head after she crawled up the stairs to the landing, where the blood had soaked through the carpet and carpet pad into the wood flooring below.

Brockington was indicted for aggravated battery in violation of OCGA § 16-5-24 for maliciously causing the victim bodily harm by "hitting [her] with an object unknown to the grand jurors" and seriously disfiguring her head, and for aggravated assault in violation of OCGA § 16-5-21 for hitting the victim on her leg with a hammer, "an object which used offensively against another person . . . is likely to result in serious bodily injury." He was convicted on both counts, and the trial court sentenced him to 20 years in prison for aggravated battery and to five years in prison followed by 15 years on probation for aggravated assault. The sentences were to run consecutively.

Under OCGA § 16-1-7 (a) (1), when the same conduct establishes the commission of more than one crime, a defendant may be prosecuted for both crimes, but cannot be convicted of more than one crime if one crime is included in the other. For purposes of merger,

> one crime is included in another if either it is established by proof of the
> same or less than all the facts or a less culpable mental state than is

required to establish the commission of the other crime charged or if the included crime differs from the crime charged only in the respect that a less serious injury or risk of injury to the same person or a lesser kind of culpability suffices to establish its commission.

(Punctuation and footnotes omitted.) *Robbins v. State*, 293 Ga. App. 584, 585 (667 SE2d 684) (2008). Offenses which require proof of different facts do not merge. *Drinkard v. Walker*, 281 Ga. 211, 213 (636 SE2d 530) (2006).

In this case, the offenses required proof of different facts, which the State presented. "A person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." OCGA § 16-5-21 (a) (2). A person commits aggravated battery when he maliciously causes bodily harm to the victim by rendering a member of her body useless. OCGA § 16-5-24 (a). The State presented evidence that Brockington assaulted the victim by striking her on her leg with a hammer and rendering her unable to walk, and also presented evidence that afterward, as the victim crawled up the stairs to the landing, he struck her on her head with such force that he crushed her skull. Because each offense required proof of a fact that the other offense did not, the crimes did not merge legally or factually. *Robbins v. State*, 293 Ga. App. 584, 585-

586 (667 SE2d 684) (2008); *Gant v. State*, 291 Ga. App. 823, 826 (3) (662 SE2d 895) (2008).

Brockington also argues that because the State alleged that he hit the victim with a hammer first on her leg and then on her head, the blows constituted a single transaction for which he could be sentenced only once. Multiple blows during the commission of a crime may constitute a single offense and not separate crimes. *Coleman v. State*, 286 Ga. 291, 295 (3) (687 SE2d 427) (2009) (multiple gunshot wounds inflicted in quick succession without "deliberate interval" do not constitute separate assaults); *Mikell v. State*, 286 Ga. 722, 724-725 (3) (690 SE2d 858) (2010) (49 successive stab wounds inflicted in quick succession constituted a single assault). In this case, however, Brockington's offenses did not constitute a single attack, but were separate incidents in separate locations against different parts of the victim's body. After he hit the victim in the leg with a hammer and rendered her disabled, he had completed the aggravated assault. He then waited until the victim had crawled up the stairs to the landing to hit her in the head with a hammer and crush her skull. Since the evidence authorized a finding that Brockington committed an initial aggravated assault, then after a deliberate interval, committed an aggravated battery in a different location of the house and on a different part of the victim's body,

6

separate judgments of conviction and sentences for each offense were authorized. *Lowe v. State*, 267 Ga. 410, 412 (1) (b) (478 SE2d 762) (1996).

2. Brockington also contends that his trial counsel was ineffective for not objecting to certain testimony.

> [T]o succeed on a claim of ineffective assistance of trial counsel, [Brockington] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. If an appellant fails to meet his burden of proving either prong, then we do not need to examine the other prong.

(Footnotes omitted.) *Works v. State*, 301 Ga. App. 108, 114 (7) (686 SE2d 863) (2009). Further, "[i]n general, matters of reasonable trial strategy and tactics do not amount to ineffective assistance of counsel." *Sweet v. State*, 278 Ga. 320, 324 (4) (602 SE2d 603) (2004).

(a) Brockington rode up front in the ambulance during the transport and was "very involved with trying to hear what [the paramedic and victim] were doing in the back." When the paramedic asked the victim how she became injured, Brockington repeatedly interjected that she had fallen. The paramedic testified that he told the receiving nurse at the hospital "right away that they probably should separate the two

7

because it appeared to be a domestic situation and . . . maybe, with him not around, the female patient would be able to answer more questions about what had happened."

Brockington argues that his trial counsel was ineffective for failing to object to the paramedic's testimony that he thought this was a domestic situation because it "broke the ultimate issue rule." OCGA § 24-9-65 provides that when the jury must decide a question as to the existence of a fact, "the opinions of witnesses shall be generally inadmissible," and Brockington argues that the paramedic's testimony improperly invaded the province of the jury. But the jury was not called upon to determine whether this was a "domestic situation." It had already heard the 911 call dispatching the police to Brockington's house in response to a "domestic situation" and the first officer on scene had already testified that he was responding to a possible domestic disturbance. The ultimate issue was whether Brockington assaulted and battered the victim. Trial counsel testified that he did not object to the testimony because there was no doubt that a domestic dispute had occurred and he thought that objecting would have been hurtful to the defense. Based on his pre-trial discussions with Brockington's mother, trial counsel anticipated that his defense would be that if Brockington struck the victim with anything, it was with his open, empty hand,

8

which would constitute only simple battery. As the trial court later noted, if his mother had testified as expected that Brockington hit the victim with his open hand, the jury might have convicted him of a less serious charge.[1] Brockington has not shown that counsel's tactical decision not to object to the paramedic's testimony was outside the range of reasonably effective assistance. *Sweet*, 278 Ga. at 325 (8).

(b) The receiving nurse testified that the paramedic told her to separate the victim and Brockington because he was "acting a little bit strange, [a] little bit clingy." Brockington contends that the nurse, who testified right after the paramedic, failed to identify the paramedic by name to ensure he was subject to cross-examination, that the testimony was inadmissible hearsay, and that his trial counsel's failure to object to it was ineffective. Trial counsel testified at the motion for new trial hearing that he did not object to the nurse's response because he did not think it was particularly harmful to Brockington. Counsel noted that Brockington was "very in love with this girl, and she was injured, so being clingy . . . was a normal reaction." Presuming for the sake of argument that an objection to the nurse's response would

---

[1] Brockington's mother actually testified that he never hit the victim at all, which prompted the trial court to hold a hearing outside the jury's presence at which the court noted that the mother's trial testimony contradicted her recorded statement to a detective and found her in contempt for perjury.

9

have had merit, trial counsel's decision not to object was a reasonable trial tactic and strategy which constituted neither deficient performance nor ineffective assistance. *Goodall v. State*, 277 Ga. App. 600, 604-605 (2) (c) (627 SE2d 183) (2006).

*Judgment affirmed. Adams and McFadden, JJ., concur.*