**SECOND DIVISION**
**ANDREWS, P. J.,**
**MCFADDEN and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**October 29, 2014**

# In the Court of Appeals of Georgia

A14A1395. HONESTER v. THE STATE.

McFADDEN, Judge.

After a jury trial, Wayne Honester was convicted of obstruction of a law enforcement officer. Honester appeals, asserting that his trial counsel was ineffective in failing to file a plea in bar of former jeopardy after a prior jury trial on the same charge ended in a mistrial over Honester's objection. Because counsel's performance was deficient in failing to file a plea in bar and there is reasonable probability that, but for such deficiency, the outcome below would have been different, we reverse.

Honester was indicted on a single charge of felony obstruction of a law enforcement officer by fighting with the officer during a lawful arrest. The facts underlying the indictment were that police officers, who had responded to a report of gunshots, were speaking with Honester and others in the area. After one of the

officers had asked Honester three times to remove his hands from his pockets, Honester complied and put a plastic bag in his mouth. The officer grabbed Honester's neck to try to get him to spit out the bag, but Honester pulled away as the officer tried to hold on to his arm and neck. The other officer tried to assist and they fell to the ground. Using a baton to threaten Honester, the officers subdued and handcuffed him.

Honester was tried before a jury on March 11, 2011. After deliberating for about three hours, the jury sent a note to the judge, stating, "We cannot agree on the verdi[c]t. What are your instructions?" Both the state and the defense requested that the trial court give the jury an *Allen* charge for further deliberations. See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LEd 528) (1896). The judge said that before giving such a charge he wanted to ask the jury two questions: 1) the numerical division of votes as to guilt or innocence, and 2) whether it was likely that further deliberations would result in a unanimous verdict. Honester objected to the court asking the jurors how they were voting as to guilt or innocence, but the court overruled the objection and sent the jury a note containing both questions. The jury responded that the vote was eleven to one in favor of acquittal and answered "no" to the second question.

Upon learning of the nature and numerical breakdown of the jury vote, the state withdrew its request for an *Allen* charge. Honester renewed his request for the charge and also suggested that the jurors be asked if anyone was refusing to deliberate. The court stated that it would ask that question before deciding whether to give an *Allen* charge. The court submitted the question to the jury, and the jury responded that no one was refusing to deliberate. Honester again requested that the court give the *Allen* charge.

The trial judge, however, expressed concern that such a charge would place "undue pressure on a juror." After further argument from the defense, the trial judge observed that the case "has had a lot of difficult evidence." The judge then refused to give an *Allen* charge and, over the express objection of the defense, sua sponte declared a mistrial. The court reasoned: "I don't think it appropriate to give the *Allen* charge and then put the jury back into a posture of further deliberations and pressuring when it's clear from two of the communications that they cannot reach a verdict so I'll declare a mistrial in the case."

Five days later, Honester was tried again before a different jury which returned a guilty verdict. But upon being polled in open court, one of the jurors indicated that the verdict had not been freely and voluntarily made by him. The judge then

3

instructed the jury to return to the jury room and continue deliberating. A short time later, the jury returned with another guilty verdict. Before imposing sentence, the trial court asked Honester if he wanted to say anything on his own behalf. Honester responded, "Your Honor, . . . I don't see how one week it's eleven my way and then next week all twelve say I'm guilty. I don't understand that Your Honor . . . I feel I would have been entitled to a fair trial last week. You would have did the same thing you did today send them right back in the room." Thereafter, the trial court imposed the maximum sentence of five years.

Trial counsel did not move for a new trial, but filed a direct appeal. After new appellate counsel was appointed and raised a claim of ineffective assistance of trial counsel, this court remanded the case to the trial court to give appellate counsel the opportunity to pursue the ineffectiveness claim. On remand, an evidentiary hearing was held on Honester's claim that his trial counsel was ineffective in failing to file a plea in bar following the court's sua sponte declaration of a mistrial over objection of the defense. At the hearing, trial counsel testified that he had not considered filing a plea in bar after the first trial. When asked why he did not consider it, he admitted: "I really don't have any reason. It's just not something that crossed my mind, to be

honest." Several weeks after the hearing, the trial court summarily denied the motion for a new trial. This appeal followed.

1. *Ineffective assistance of counsel.*

Honester contends that the trial court erred in denying his motion for a new trial based on his assertion that trial counsel was ineffective in failing to file a plea in bar after the first trial ended in a mistrial over the objection of the defense. We agree.

To prevail on a claim of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE2d 674) (1984), "a criminal defendant must prove (1) that his trial counsel's performance was deficient, and (2) that counsel's deficiency so prejudiced his defense that a reasonable probability exists that the result of the trial would have been different but for that deficiency." *Mattox v. State*, 305 Ga. App. 600, 605 (3) (699 SE2d 887) (2010) (citations and punctuation omitted). As to the first prong, counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Sutton v. State*, 295 Ga. 350, 354 (6) (759 SE2d 846) (2014) (citation and punctuation omitted). Thus, a "defendant making a claim of ineffective assistance must identify the acts or omissions of

5

counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, supra at 690 (III) (A).

Here, Honester has met his burden of showing that trial counsel's failure to file a plea in bar was not the result of reasonable professional judgment. As counsel's uncontradicted testimony at the ineffective assistance hearing established, he exercised no professional judgment at all with regard to filing a plea in bar. Rather, as he admitted, he had no reason for such an omission and failed to file a plea in bar simply because it never "crossed [his] mind." Because counsel's failure to file a plea in bar was the result of oversight and not the result of some trial tactic or reasonable professional judgment, such failure constitutes deficient performance. See *Henderson v. Hames*, 287 Ga. 534, 539-540 (3) (697 SE2d 798) (2010) (failure to raise issue was not a reasonable tactic or trial strategy where counsel admitted that he simply "failed to notice" the legal issue).

Honester must also show that counsel's deficient performance prejudiced his defense. *Mattox*, supra. As no plea in bar was filed, the merits of such a plea are not directly before us. Rather we must decide whether Honester has shown that there is a reasonable probability that the outcome below would have been different if counsel had filed a plea in bar.

6

In that light we examine the propriety of the trial court's sua sponte declaration of a mistrial, over Honester's objection, in the first trial. Once jeopardy has attached, a mistrial may be declared over the defendant's objection only in cases of manifest necessity.

> Once a defendant's jury is impaneled and sworn, jeopardy attaches, and he is entitled to be acquitted or convicted by that jury. If a mistrial is declared without a defendant's consent or over his objection, the defendant may be retried only if there was a manifest necessity for the mistrial. A manifest necessity to declare a mistrial may exist under urgent circumstances, such as where an impartial verdict cannot be reached. Because of the severe consequences of ordering a mistrial without the accused's consent, a trial court should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives. The state bears the heavy burden of showing such manifest necessity where, as here, a mistrial is granted over the defendant's objection. It is also within the trial court's discretion to determine whether a jury is hopelessly deadlocked, thus necessitating a mistrial. The decisive factor is not the length of the deliberation, but the inability of the jury to agree on a verdict.

*Johnson v. State*, 256 Ga. App. 730, 731-732 (569 SE2d 625) (2002) (citations and punctuation omitted).

> A trial court's judgment about whether there was manifest necessity to grant a mistrial is entitled to great deference. A trial judge has acted within his sound discretion in rejecting possible alternatives and in granting a mistrial, if reasonable judges could differ about the proper disposition, even though in a strict, literal sense, the mistrial is not necessary. This great deference means that the availability of another

7

> alternative does not *without more* render a mistrial order an abuse of sound discretion.

*Ogletree v. State*, 300 Ga. App. 365, 366 (685 SE2d 351) (2009) (citation and punctuation omitted, emphasis supplied).

In the instant case, while the trial judge's decision to grant a mistrial is entitled to great deference, there existed not only less drastic alternatives, but other factors which arguably rendered the grant of a mistrial an abuse of discretion. The first of those other factors was the trial court's error in asking the jury the precise nature of its vote as to guilt and innocence. "The law is clear in this state that a trial court may, after the jury has had a case under consideration and indicates that it is unable to agree on a verdict, inquire how the jury stands numerically." *Gibson v. State*, 272 Ga. 801, 802 (2) (537 SE2d 72) (2000) (citations and punctuation omitted). But "[t]rial courts should not, of course, inquire as to the nature of a jury's numerical division. And we encourage them to inform jurors not to reveal that information." *Sears v. State*, 270 Ga. 834, 839 (1), n. 1 (514 SE2d 426) (1999) (citations omitted). Here, the trial court not only failed to inform the jurors not to reveal the nature of their votes as to guilt or innocence, but expressly solicited such information over Honester's objection. Compare *Gibson*, supra (trial court properly asked jurors for numerical

8

breakdown of their vote, while specifically cautioning them not to state whether vote favored acquittal or conviction). After the jury provided the improper information requested by the court, indicating a vote of eleven to one in favor of acquittal, the state immediately withdrew its earlier request for an *Allen* charge, and a short time later the trial court acquiesced in the state's newfound position.

The trial court also compounded its error by failing to follow "the better practice [of] consider[ing] carefully the factors listed in *Thornton v. State*, 145 Ga. App. 793, 795 (245 SE2d 22) (1978) before declaring a mistrial." *Hurston v. State*, 206 Ga. App. 570, 571 (1) (426 SE2d 196) (1992). Although not mandatory, pursuant to *Thornton*, supra,

> [w]hen the trial court is informed of a deadlock, the following are among the steps to be taken in deciding whether to order a mistrial or to require the jury to deliberate further: (1) polling the jurors or questioning them as a group to determine whether additional time would be helpful; (2) considering whether the jury is so exhausted that the free will of the minority might be overcome; (3) considering the length of the trial and the complexity of the case; and (4) considering the length of time the jury has deliberated.

*Albert v. State*, 180 Ga. App. 779, 786 (8) (350 SE2d 490) (1986) (citations and punctuation omitted). Here, the trial court took none of these steps, and instead sent the jury a second note asking if anyone was refusing to deliberate. Upon receiving the

9

jury's response that no one was refusing to deliberate, the trial judge made no further inquiries of the jury and declared a mistrial.

In doing so, the trial court correctly noted that the jury had indicated that it could not agree on a verdict. However, "the trial court was not bound by those pronouncements. [Cit.] On the contrary, the trial court, in the exercise of a sound discretion, was required to make its own determination as to whether further deliberations were in order. [Cit.]" *Sears*, supra at 838 (1) (jury twice stated that it was at an eleven to one "deadlock," but trial court was not bound by those statements). See also *Todd v. State*, 243 Ga. 539, 542 (3) (255 SE2d 5) (1979) (trial court was not required to accept jury's feeling that it was "hopelessly deadlocked"). In refusing to instruct the jury to deliberate further, the trial court's expressed rationale was that doing so would somehow put undue pressure on the jury.

The trial judge offered no explanation as to why a proper *Allen* charge would result in such undue pressure, and thus his reasoning appears to be premised on the false presumption that he could have only given an improperly coercive instruction. Indeed, based on the trial court's unexplained reasoning, a valid *Allen* charge or other instruction to continue deliberations could never be given once a jury has claimed to be at an impasse. This, of course, is not the law in Georgia, which has approved the

10

use of non-coercive *Allen* charges by trial judges confronted with a deadlocked jury. *McMillan v. State*, 253 Ga. 520, 523 (4) (322 SE2d 278) (1984). As our Supreme Court has explained, "unless the trial judge must declare a mistrial as soon as the jury reports difficulty reaching a verdict – and we have just held to the contrary – then some supplemental instructions concerning further deliberations are desirable, perhaps even necessary." *Romine v. State*, 256 Ga. 521, 527 (1) (d) (350 SE2d 446) (1986). Such instructions are appropriate as long as they are not "coercive so as to cause a juror to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors." *Scott v. State*, 290 Ga. 883, 888 (6) (725 SE2d 305) (2012).

Under the circumstances of this case, there is no reason why the trial court could not have simply given the pattern jury instructions for a hung jury or an otherwise appropriately non-coercive *Allen* charge. For instance, in the similar case of *Gamble v. State*, 291 Ga. 581, 583-584 (5) (731 SE2d 758) (2012), the jury had deliberated for two-and-a-half hours when it indicated a deadlock and asked what to do in the case of a hung jury. As in the instant case, the trial court asked whether any juror was refusing to deliberate and whether it was likely that further deliberations would result in verdict, and the jury answered "no" to both questions. But unlike the

11

instant case, the trial court did not then sua sponte declare a mistrial, and instead properly gave the pattern jury charge. Id. See also *Larry v. State*, 266 Ga. 284, 287-288 (5) (466 SE2d 850) (1996) (trial court gave non-coercive *Allen* charge after learning that one juror wished to be excused from deliberations because she "felt that fellow jurors were trying to make the decision for her"). Here, the trial court's flawed reasoning that any *Allen* charge would have put undue pressure on the jury does not provide a valid basis for the sua sponte declaration of a mistrial over the objection of the defense.

Moreover, the record reveals circumstances that are typically cited as factors that support instructing a deadlocked jury to continue its deliberations, rather than immediately granting a mistrial. The jury had deliberated for the relatively short time of three hours, the jury indicated that no one was refusing to deliberate, and the jurors were only a single vote from unanimity. Under these circumstances, further deliberations certainly would have been appropriate. See *Sanders v. State*, 290 Ga. 445, 449-450 (6) (721 SE2d 834) (2012) (no error in giving *Allen* charge where jury was deadlocked after eight hours but all jurors were still participating in deliberations); *Humphreys v. State*, 287 Ga. 63, 80 (9) (a) (694 SE2d 316) (2010) (no abuse of discretion in denying motions for mistrial where all jurors still deliberating

12

after several hours); *Jones v. State*, 273 Ga. 231, 234-235 (5) (539 SE2d 154) (2000) (no error in requiring jury to continue deliberating where deadlocked 11-1 after ten hours of deliberations); *Gibson*, supra at 803 (2) (no error giving *Allen* charge after seven hours of deliberations and court had learned of 11-1 deadlock since "[a]n inquiry into the numerical division of a deadlocked jury enables the court to ascertain the likelihood of agreement among the jurors"); *Sears*, supra at 835 (1) (court properly instructed jury to continue deliberations where jurors were deadlocked 11-1 after deliberating for six hours). Instead, the trial judge, without further questioning of the jury, opted for the most drastic measure of interrupting the proceedings and, on his own, declaring a mistrial.

The power of a trial judge to interrupt proceedings on his own by declaring a mistrial is subject to stringent limitations. *State v. Johnson*, 267 Ga. 305 (477 SE2d 579) (1996). In this case, for the reasons set forth above, we conclude that there is a reasonable probability that a reviewing court could find that there was no manifest necessity for the exercise of such power and the sua sponte declaration of a mistrial in the first trial. See *Johnson v. State*, supra at 731-732 (standard of review of grant or denial of a double jeopardy plea in bar is whether, after reviewing the trial court's oral and written rulings as a whole, the court's findings support its conclusion).

13

Accordingly, there is also a reasonable probability that the outcome below would have been different if Honester's counsel had not deficiently failed to file a plea in bar. Because counsel's deficient performance prejudiced the defense, the trial court erred in denying Honester's motion for a new trial on the ground of ineffective assistance of counsel.

We therefore reverse. On remand the trial court should grant the motion for new trial thereby allowing Honester an opportunity to file a plea in bar.

2. *Remaining arguments.*

Because of our holding above in Division 1, we need not reach Honester's remaining arguments.

*Judgment reversed. Andrews, P. J., concurs; Ray, J., concurs in the judgment only.*

14