**SECOND DIVISION**
**ANDREWS, P. J.,**
**MILLER, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 11, 2016**

# In the Court of Appeals of Georgia

A15A2235. HONESTER v. THE STATE.

BRANCH, Judge.

Wayne L. Honester appeals from the denial of his plea in bar, arguing that the trial court erred when it terminated his first trial on a felony obstruction charge before the jury reached a verdict. Honester contends that instead of declaring a mistrial, the trial court should have provided the jury with an appropriate *Allen* charge[1] and instructed it to continue deliberating. Honester also asserts that because the trial court declared the mistrial over his objection and in the absence of any manifest necessity

---

[1] When the jury in a criminal trial indicates it is deadlocked, the parties may request an *Allen* charge, encouraging the jurors to reexamine their opinions in continued deliberations as they attempt to reach a unanimous verdict. See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LEd 528) (1896). Such a charge should also caution the jury that no juror should abandon an honest conviction simply for the sake of reaching a consensus. See *Sears v. State*, 270 Ga. 834, 838 (1) (514 SE2d 426) (1999).

for doing so, he was entitled to a plea in bar as a matter of law. For reasons explained more fully below, we agree with Honester. We therefore reverse the trial court's order and remand this case with direction.

On an appeal from the grant or denial of a double jeopardy plea in bar, we generally review "the trial court's oral and written rulings as a whole" to determine whether any factual findings contained therein support the trial court's ruling as to whether the defendant was entitled to a plea in bar. *Cotman v. State*, 328 Ga. App. 822-823 (762 SE2d 824) (2014). See also *Garrett v. State*, 306 Ga. App. 429 (702 SE2d 470) (2010). But in those cases where the relevant facts are undisputed and "no question regarding the credibility of witnesses is presented, we review de novo the trial court's application of the law to undisputed facts." *Cotman*, 328 Ga. App. at 823, quoting *Garrett*, 306 Ga. App. at 429.

The facts relevant to this appeal are undisputed and many of them are set forth in our opinion in *Honester v. State*, 329 Ga. App. 406 (765 SE2d 376) (2014) ("*Honester I*") (physical precedent only)[2], as follows:

---

[2] *Honester I* is physical precedent only because one of the judges on the three-judge panel concurred in the judgment only. See Court of Appeals Rule 33 (a). While the decision may not have precedential value for other cases, it remains binding in Honester's case. See *Ross v. State*, 310 Ga. App. 326, 327 (713 SE2d 438) (2011) ("[i]t is well established that any issue that was raised and resolved in an earlier appeal is the law of the case and is binding on this Court, and that the law of the case doctrine is not confined to civil cases, but applies also to rulings made by appellate courts in criminal cases") (punctuation and footnotes omitted).

Honester was indicted on a single charge of felony obstruction of a law enforcement officer by fighting with the officer during a lawful arrest. . . . Honester was tried before a jury on March 11, 2011. After deliberating for about three hours, the jury sent a note to the judge, stating, "We cannot agree on the verdict. What are your instructions?" Both the state and the defense requested that the trial court give the jury an *Allen* charge for further deliberations. . . . The judge said that before giving such a charge he wanted to ask the jury two questions: 1) the numerical division of votes as to guilt or innocence, and 2) whether it was likely that further deliberations would result in a unanimous verdict. Honester objected to the court asking the jurors how they were voting as to guilt or innocence, but the court overruled the objection and sent the jury a note containing both questions. The jury responded that the vote was eleven to one in favor of acquittal and answered "no" to the second question.

Upon learning of the nature and numerical breakdown of the jury vote, the state withdrew its request for an *Allen* charge. Honester renewed his request for the charge and also suggested that the jurors be asked if anyone was refusing to deliberate. The court stated that it would ask that question before deciding whether to give an *Allen* charge. The court submitted the question to the jury, and the jury responded that no one was refusing to deliberate. Honester again requested that the court give the *Allen* charge.

The trial judge, however, expressed concern that such a charge would place "undue pressure on a juror." After further argument from the defense, the trial judge observed that the case "has had a lot of difficult evidence." The judge then refused to give an *Allen* charge and,

over the express objection of the defense, sua sponte declared a mistrial. The court reasoned: "I don't think it appropriate to give the Allen charge and then put the jury back into a posture of further deliberations and pressuring when it's clear from two of the communications that they cannot reach a verdict so I'll declare a mistrial in the case."

Five days later, Honester was tried again before a different jury which returned a guilty verdict. But upon being polled in open court, one of the jurors indicated that the verdict had not been freely and voluntarily made by him. The judge then instructed the jury to return to the jury room and continue deliberating. A short time later, the jury returned with another guilty verdict. Before imposing sentence, the trial court asked Honester if he wanted to say anything on his own behalf. Honester responded, "Your Honor, ... I don't see how one week it's eleven my way and then next week all twelve say I'm guilty. I don't understand that Your Honor ... I feel I would have been entitled to a fair trial last week. You [should] have [done] the same thing you did today send them right back in the room." Thereafter, the trial court imposed the maximum sentence of five years.

*Honester I*, 329 Ga. App. at 406-408.

Following his conviction, Honester moved for a new trial, asserting that his lawyer's failure to file a plea in bar after Honester's first trial constituted ineffective assistance. Id. at 408. The trial court denied that motion, Id. at 408 (1), but this Court reversed, finding both that Honester's trial counsel had performed deficiently in

4

failing to file a plea in bar and that Honester had suffered prejudice as a result of that deficient performance. Id. at 413 (1). On remand, Honester filed a plea in bar, and the trial court held a brief hearing on that motion, at which it heard arguments of counsel as to whether the mistrial was prompted by manifest necessity and whether Honester was entitled to a plea in bar as a matter of law. Following that hearing, the trial court denied Honester's motion in a summary order which states simply that "[a]fter a full hearing on the matter, consideration of the evidence[3], and argument[s] [of the parties], Defendant's plea in bar is hereby denied." Honester now appeals from that order.[4]

---

[3] Despite this recitation by the trial court, the transcript of the hearing on Honester's plea in bar shows that it was not an evidentiary hearing. Instead, during that 19-minute proceeding, the trial court heard argument from both the State and Honester as to whether, based on the undisputed facts related to the mistrial, Honester was entitled to a plea in bar as a matter of law.

[4] Following the plea in bar hearing, the trial court held a hearing on Honester's motion for reconsideration of his bond. The trial court thereafter entered an order setting Honester's bond "on his own recognizance" and noting that the State was "dead docketing" the case. Although the dead docketing of the case means the State has no immediate plans to retry Honester, the State would nevertheless have the right to try Honester a second time in the absence of a plea in bar. See *Beam v. State*, 265 Ga. 853, 855, n. 3 (463 SE2d 347) (1995) ("[d]ead-docketing has been characterized as a procedural device by which the prosecution is postponed indefinitely but may be reinstated any time at the pleasure of the court. Placing a case upon the dead docket certainly constitutes neither a dismissal nor a termination of the prosecution . . . . A case is still pending which can be called for trial at the judge's pleasure . . .") (citations and punctuation omitted). Approximately three weeks after setting Honester's recognizance bond, the trial court entered its order denying his plea in bar.

At the time an accused's jury is impaneled and sworn, jeopardy attaches and the accused is entitled, under the double jeopardy provisions of both the State and Federal Constitutions, to have his trial proceed either to conviction or acquittal before that particular tribunal. *Smith v. State*, 263 Ga. 782, 783 (1) (439 SE2d 483) (1994). See also *Jones v. State*, 232 Ga. 324, 326 (206 SE2d 481) (1974). Thus, the declaration of a mistrial over the defendant's objection will bar a retrial unless the record shows that the mistrial resulted from "manifest necessity." *Harvey v. State*, 296 Ga. 823, 830 (2) (a) (770 SE2d 840) (2015). See also *United States v. Perez*, 22 U. S. (9 Wheat.) 579, 580 (6 LEd 165) (1824). "The United States Supreme Court has clarified that the [term] 'manifest necessity'. . . cannot be interpreted literally, and that a mistrial is appropriate when there is a 'high degree' of necessity." *Harvey*, 296 Ga. at 830-831 (2) (a), quoting *Renico v. Lett*, 559 U. S. 766, 774 (II) (130 SCt 1855, 176 LE2d 678) (2010). And the "urgent circumstances" that give rise to the manifest necessity to declare a mistrial include cases "where 'an impartial verdict cannot be reached, or where a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial.'" *Smith*, 263 Ga. at 783 (1), quoting *Illinois v. Somerville*, 410 U. S. 458, 464 (II) (93 SCt 1066, 35 LE2d 425) (1973). See also *Glass v. State*, 250 Ga. 736, 738 (2) (300 SE2d 812)

6

(1983) ("[w]here the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial") (citations omitted).

The question of whether a jury is "hopelessly deadlocked," and thus the existence of manifest necessity for a mistrial, is within the discretion of the trial court. See *Harvey*, 296 Ga. at 832 (2) (a); *Romine v. State*, 256 Ga. 521, 525 (1) (b) (350 SE2d 446) (1986). That discretion, however, "is not unbridled," *Haynes v. State*, 245 Ga. 817, 819 (268 SE2d 325) (1980), and it must be exercised carefully, particularly where the trial court is declaring a mistrial either sua sponte or at the request of the State and over the objection of the defendant. *State v. Johnson*, 267 Ga. 305, 305 (477 SE2d 579) (1996) ("'the power of the trial judge to interrupt the proceedings on his own or the prosecutor's motion by declaring a mistrial is subject to stringent limitations'") (citation omitted), quoting *Jones*, 232 Ga. at 326-327. The careful exercise of its discretion, in turn, requires the trial court to take certain steps before concluding that the jury is hopelessly deadlocked and that a mistrial is necessary.

Given "the severe consequences of ordering a mistrial without the accused's consent," *Smith*, 263 Ga. at 783 (1) (citation and punctuation omitted), it is "highly important" that the trial court undertake "a consideration of alternative remedies" before declaring a mistrial based on a jury's alleged inability to reach a verdict.

*Haynes*, 245 Ga. at 819. Specifically, a trial court must "'give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, calling for a recess if necessary and feasible to guard against hasty mistakes.'" *Harvey*, 296 Ga. at 832 (2) (a) (punctuation omitted), quoting *Smith*, 262 Ga. at 783 (1). Accordingly, a trial court may not allow itself to be bound by a jury's pronouncement that it is hopelessly deadlocked. See *Sears*, 270 Ga. at 838 (1) ("[a]lthough the jury twice stated that it was at an eleven to one 'deadlock,' the trial court was not bound by those pronouncements") citing *Todd v. State*, 243 Ga. 539, 542 (3) (255 SE2d 5) (1979) ("[t]he trial judge is not bound to accept the jury's feeling that it is hopelessly deadlocked"). "On the contrary, the trial court, in the exercise of a sound discretion, [is] required to make its own determination as to whether further deliberations [are] in order." *Sears*, 270 Ga. at 838 (1) (citation omitted). See also *Harvey*, 296 Ga. at 832 (2) (a) ("the record must show that the trial court actually exercised its discretion") (citations omitted); *Romine*, 256 Ga. at 524 (1) (b).

The exercise of such discretion, in turn, requires the trial court to take additional steps to determine whether there is little or no possibility of the jury reaching a verdict. Such steps may include polling the jurors individually or

8

questioning them as a group to determine how close they are to an agreement and/or whether one or more jurors is refusing to deliberate. See *Sanders v. State*, 290 Ga. 445, 449-450 (6) (721 SE2d 834) (2012) (no error in giving *Allen* charge where jury was deadlocked after eight hours but all jurors were still participating in deliberations); *Humphreys v. State*, 287 Ga. 63, 80 (9 (a) (694 SE2d 316) (2010) (no abuse of discretion in denying motions for mistrial where all jurors still deliberating after several hours); *Wood v. State*, 234 Ga. 758, 759 (1) (218 SE2d 47) (1975) (affirming denial of plea in bar where mistrial declared following 11 hours of deliberations; after polling jurors individually, the trial court determined that further deliberations would be "fruitless"). See also *Thornton v. State*, 145 Ga. App. 793, 794 (245 SE2d 22) (1978).[5] The trial court should also consider the length of time the jury deliberated before declaring itself deadlocked and whether the time spent in jury

---

[5] In *Thornton*, we set forth a number of factors for a trial court to consider when determining whether a declaration of a mistrial is necessary. Those factors include the results of a jury poll "as to whether additional time for deliberation would be helpful"; "the length of the trial and the complexity of the issues in the case"; and a "[c]onsideration of the length of time the jury deliberated before declaring itself deadlocked." 145 Ga. App. at 795. Additionally, in those cases where the jury has already engaged in lengthy deliberations, the trial court should also consider "whether the jury is so exhausted that the minority might be induced to vote for a verdict which they otherwise would not support." Id.

9

deliberations is commensurate with the length of the trial and the complexity of the issues the jury has been asked to decide. See *Sears*, 270 Ga. at 837-839 (1) (trial court did not err in requiring jury to continue its deliberations after it twice-reported that it was deadlocked; the case was a capital murder trial and the jury first reported it was deadlocked after only six hours of deliberation and again announced it was deadlocked after "just another three hours" of deliberation); *Romine*, 256 Ga. at 526 (1) (c) ("[c]onsidering the length and complexity of the trial, the length of time the jury deliberated before declaring itself deadlocked, and the amount of progress made in the interim, we find no abuse of discretion in the court's refusal to declare a mistrial"). See also *Thornton*, 145 Ga. App. at 795.

Here, in response to the trial court's inquiry, the jury had stated that no juror was refusing to deliberate and that the jury was close to a unanimous decision. Additionally, the jury had deliberated for only about three hours before declaring that it could not reach a verdict. The trial court, however, noted that the case "'had a lot of difficult evidence.'" *Honester I*, 329 Ga. App. at 407. Given the trial court's own description of the evidence, the relatively short length of time the jury had been deliberating before declaring itself deadlocked showed that further deliberations were

10

called for. Thus, the information known to the trial court at the time the jury pronounced itself deadlocked supported the giving of an *Allen*-type charge

The trial court, however, declined to give an *Allen* charge, despite Honester's three separate requests that it do so. The stated reason for this refusal was the trial court's concern that such a charge would place undue pressure on the lone juror voting to convict. This reasoning, however, was flawed in at least two respects. First, the trial court's rationale for refusing the *Allen* charge erroneously assumed that such a charge will be considered coercive whenever there is a significant numerical division on the jury. The Georgia Supreme Court, however, has previously held that the giving of the pattern *Allen* charge under similar circumstances is not coercive. See *Gibson v. State*, 272 Ga. 801, 803-804 (3) (537 SE2d 72) (2000) (trial court did not err in giving Allen charge even after learning jury was divided 11-1); *Jones v. State*, 273 Ga. 231, 234-235 (5) (539 SE2d 154) (2000) (no error in giving an *Allen* charge after jury reported it was split 11-1 in favor of a sentence of death); *Sears*, 270 Ga. at 835 (1) (court properly instructed jury to continue its deliberations where jury reported being deadlocked 11-1 after six hours of deliberations). See also *Gamble v. State*, 291 Ga. 581, 584 (5) (731 SE2d 758) (2012) (pattern jury charge requiring an allegedly deadlocked jury to deliberate further is not "impermissibly coercive");

11

*Sanders*, 290 Ga. at 449-450 (6) (same). And even in the absence of the pattern charge, the judge could have given any charge

> urging the jury to reach a consensus [so long as the charge] did not put pressure on the jurors 'one way or the other,' *Romine*, 256 Ga. at 525 [(1) (b)]; [ ] did not exhort 'the minority to reexamine its views in deference to the majority, or to suggest that the majority's position is correct[,]' *United States v. Norton*, 867 F2d 1354, 1366 (11th Cir. 1989) [;] . . . [or] urge the jurors 'to abandon an honest conviction for reasons other than those based upon the trial or the arguments of other jurors.' *Harris v. State*, 262 Ga. 526, 528 (435 SE2d 669) (1993).

*Sears*, 270 Ga. at 838 (1).

Additionally, the stated reason for the trial court's decision to declare a mistrial sua sponte shows that the trial court considered only the possibility that such a charge would unduly pressure the juror voting to convict. The court failed to consider Honester's right to have his trial completed before this particular tribunal. When determining manifest necessity for declaring a mistrial, however, the trial court must "weigh[] the rights of both parties in light of the totality of the surrounding circumstances." *Tubbs v. State*, 276 Ga. 751, 754 (3) (583 SE2d 853) (2003) (citation omitted). See also *Jones*, 232 Ga. at 327 ("the existence of 'manifest necessity' is to be determined by weighing the defendant's right to have his trial completed before

12

the particular tribunal against the interest of the public in having fair trials designed to end in just judgments; and the decision must take into consideration all the surrounding circumstances") (citation omitted). Thus, the trial court abused its discretion when it failed to give any weight to Honester's rights before declaring a mistrial.

Finally, the trial court also abused its discretion when, before deciding whether to give the requested *Allen* charge and over Honester's objection, the trial court specifically asked the numerical division of the jury as to guilt or innocence.[6] The trial court then compounded this error when it appeared to consider the nature of the jury's numerical division in deciding whether to require the jury to deliberate further or to declare a mistrial. See *Honester I*, 329 Ga. App. at 407 (after determining, over Honester's objection, the nature of the jury's numerical division, the trial court declined to give an *Allen* charge, citing its concern that such a charge would place undue pressure on the lone juror voting to convict). The law is clear that in an effort to determine whether it should order further deliberations, the trial court "'may . . . inquire how the jury stands numerically.'" *Gibson*, 272 Ga. at 802 (2), quoting

---

[6] In its brief, the State concedes that "it was improper for the trial court to [inquire as to] the nature of the [jury] split in terms of guilt or innocence."

13

*Muhammad v. State*, 243 Ga. 404, 407 (4) (254 SE2d 356) (1979). But the law is equally clear that a trial court may not inquire into "the 'nature of a jury's numerical division,'" *Gibson* at 803 (2), and in fact should caution the jurors not to state whether the vote favors acquittal or conviction.[7] *Sears*, 270 Ga. at 839 (1), n.1. See also *Gibson*, 272 Ga. at 802 (2) (noting that inquiring into the jury's numerical division, the trial court "specifically caution[ed the jury] not to state . . . whether the vote favored acquittal or conviction"). Although a trial court may be vested with broad discretion in certain areas – including the determination of manifest necessity for a mistrial – that discretion does not allow the trial court to do that which the law expressly forbids.

As the foregoing demonstrates, the "flawed reasoning" employed by the trial court in refusing the requested *Allen* charge "[did] not provide a valid basis for the sua sponte declaration of a mistrial over the objection of the defense." *Honester I*, 329 Ga. App. at 412 (1). Thus, the trial court abused its discretion in sua sponte declaring

_____

[7] Our Supreme Court has indicated that a trial court's inquiry into the numerical division of the jury as to the defendant's guilt or innocence may constitute a legal error of constitutional dimension – i.e., it is possible that such an inquiry could jeopardize a defendant's constitutional rights to due process and a fair trial. See *Gibson*, 272 Ga. at 802-803 (2). Compare *Jones*, 273 Ga. at 234 (5) (no error occurred where "[a]lthough the trial court learned of the nature of the split . . . the jury volunteered this information without prompting by the judge") (footnote omitted).

a mistrial rather than instructing the jury to deliberate further. *Haynes*, 245 Ga. at 819 ("[i]n cases in which there is no manifest necessity for aborting a trial rather than using other less drastic remedies to cure problems, in the absence of defendant's motion for a mistrial, the granting of a mistrial is an abuse of discretion"), citing *United States v. Jorn*, 400 U. S. 470 (91 SCt 547, 27 LE2d 543) (1971). Honester, therefore, was entitled to a plea in bar as a matter of law, and we reverse the order of the trial court denying the same. See *Otis v. State*, ___ Ga. ___ (Case No. S15A1717, decided February 8, 2016) ("[w]here a mistrial has been improperly declared over the protest of the accused, the prisoner cannot be tried again") (citation and punctuation omitted); *Smith*, 263 Ga. at 785 (2) (b) (where no manifest necessity existed for declaring a mistrial over defendant's objection, defendant was entitled to plea in bar as a matter of law). Upon remand, the trial court shall grant the plea in bar.

*Judgment reversed and case remanded with direction. Andrews, P. J., and Miller, P. J., concur.*