**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**November 15, 2016**

# In the Court of Appeals of Georgia

A16A1430. WASHINGTON v. THE STATE.

ANDREWS, Presiding Judge.

This is the second appearance of this case in this Court. In *Washington v. State*, we concluded that the state of the appellate record prevented us from reviewing Devin Washington's claim that "the trial court erred by declaring a mistrial as to the charge of felony murder and, accordingly, that double jeopardy bars a second prosecution such that the trial court should have granted his plea in bar." 333 Ga. App. 236 (775 SE2d 719) (2015) ("*Washington I*"). Following a hearing on remand, the Superior Court of Richmond County again denied Washington's plea in bar, and he appeals. We conclude that the original trial judge erred in failing to properly review the verdict form prior to publishing the verdict and discharging the jury. As a consequence, the judge failed to identify an ambiguous verdict and take appropriate

action to clarify the ambiguity. The result is that Washington's plea in bar as to felony murder, based upon double jeopardy, should have been granted. Accordingly, we reverse the trial court's denial of Washington's plea in bar and remand for a new trial on voluntary manslaughter.

1. We adopt our findings concerning the evidence in *Washington I*, in which we noted that the evidence, when viewed in a light most favorable to the jury's verdicts, revealed that

> in the early morning hours on the day in question, Devin Washington and the victim, Preshawn Williams, arrived at an Augusta nightclub in a Jeep driven by Williams. At the same time, Marcus Washington (no relation to Devin) arrived at the club in a Monte Carlo driven by an acquaintance and accompanied by Williams's cousin. When Marcus prepared to enter the club, he was suddenly attacked from behind by Devin, and the two continued to scuffle in the parking lot until the club's owner demanded that they leave the premises.
>
> Marcus returned to the Monte Carlo and Devin returned to the Jeep, which was parked beside the Monte Carlo. Marcus demanded that the driver unlock the Monte Carlo so that he could get inside the vehicle, but she hesitated to do so and passed the keys to Williams's cousin. The cousin eventually unlocked the Monte Carlo and Marcus immediately retrieved a firearm from beneath the front-passenger seat. At that point, a gun battle erupted between Marcus and Devin (who, according to

2

witnesses and Marcus, had been threatening to shoot if Marcus got into the Monte Carlo). At some point, Williams, who had reentered the Jeep, was shot in the leg and head by two of Marcus's bullets, and he subsequently died as a result of the head injury.

(Footnotes omitted.) 333 Ga. App. at 236. As a result, "Marcus and Devin were jointly indicted on charges of malice murder, felony murder, and possession of a firearm during the commission of a felony[,]" and "the jury found both defendants not guilty of malice murder but guilty of possessing firearms during the commission of a felony." Id. at 236-237. "As to felony murder, the jury acquitted Marcus, but the trial court declared a mistrial as to Devin." Id. at 237.

2. In his first enumeration of error, Washington contends that the trial court erred in crossing out the phrase "not guilty" on Count 2 (felony murder) of the verdict form and declaring a mistrial on that count. Due to the state of the appellate record, we were unable to address this argument in *Washington I*. Our concern was grounded primarily upon the record's silence on the following questions: (1) "at what point the trial judge saw the verdict form[,]" which precluded us from determining "whether the trial judge saw the form before or after deciding to declare a mistrial[,]" *Washington I*, 333 Ga. App. at 247 (1); (2) "whether, if the judge saw the form after the verdict was read into the record, it was before or after the jury had dispersed[,]"

3

Id. at 248 (1); and (3) whether "it was the trial judge who marked through the words [felony murder not guilty] written by the jury foreperson on the verdict form as to [felony murder]. . . ." Id. As a result, we remanded Washington's case to the trial court for a hearing before a different judge to further address these issues and, ultimately, to permit meaningful appellate review of Washington's claim. Id.

(a) *Publication of the Verdict.* Although we previously reviewed the record for the history of the publication of the verdict and the trial court's decision to declare a mistrial as to Count 2, see *Washington I*, 333 Ga. App. at 239-242, our review of this case will be assisted by recounting it here:

> [T]he record reflects that both Marcus and Devin requested that the jury be instructed on voluntary manslaughter as a lesser-included offense of malice murder and felony murder, and the jurors were so charged. Then, after retiring to deliberate and requesting and receiving reinstruction as to the various offenses at issue, the jurors inquired as to whether they could "apply voluntary manslaughter instead of felony murder." In response, the court reinstructed the jurors that should they find a defendant not guilty of malice murder or felony murder, they would be authorized to determine whether he was guilty of the lesser-included offense of voluntary manslaughter.
>
> A while later, the jurors sent out a second note indicating that they "[could] not reach a unanimous decision on Count 2 for both

4

defendants." Because the trial court and the attorneys were unclear as to what this note meant (i.e., whether the jurors believed that they must reach the same verdict as to both defendants or whether they had reached a verdict as to one defendant but not the other), the court requested in writing that the jurors clarify their question. The jurors then asked, "[i]f we are unable to come to a unanimous decision on Count 2 for both defendants what are our options?" The court, still unclear as to the jury's exact issue, responded in writing as follows: "You have to make a decision as to each count 1 for (sic) each defendant independently. Have you reached a decision as to one defendant or are you undecided as to both?" The jurors responded that they were "not all in agreement on Count 2 for Devin Washington."

The trial court then struggled with this response by the jury, pondering

. . . [a]re they not in agreement as to the charge or as to the verdict? They are not in agreement. So are half [of] them going to voluntary [manslaughter] or other (sic) half going to felony murder or are they — I mean I don't know how to get them to answer that. I guess what we should say — but I mean we've got — I mean are they — if they are not in agreement as to the charge that's different than if they are not in agreement as to guilt or innocence.

Ultimately, the trial court decided to issue an *Allen* charge to the jury. The court also decided to write back to the jurors, advising that they would "need to continue [their] deliberations."

5

Although the transcript gives no indication as to the timing, either concurrent with the aforementioned communication or after it, the trial court requested in writing that the jurors, "[w]ithout specifying which way [they] [were] leaning, . . . provide a count (number) as to each defendant and each count and what the split is." This handwritten sheet submitted to the jury by the trial court referred to the various charges only by count number, not by the name of the charged offense; and in response, the jurors indicated that they were unanimous as to every count for the defendants except "Count 2" for Devin Washington, on which they were split eleven to one.

After receiving the *Allen* charge and again retiring to deliberate, the jurors sent another communication to inform the trial court that they had "exhausted all attempts to come to a unanimous decision on Count 2 for Devin Washington." At that point, the following colloquy took place on the record:

THE COURT: All right. Thank you we are back in session and everybody can be seated. I'll ask the foreperson while we're waiting on the verdict form. It is my understanding, based on the communication that you have made to the Court, that a unanimous verdict [h]as been reached on all counts with the exception of count 2 as to Devin Washington; is that correct?

FOREPERSON: That's correct.

THE COURT: And that — to the — who is the foreperson? And based on your communication you have written that y'all are hopelessly deadlocked to that count as to Devin Washington. Is that correct?

FOREPERSON: Yes.

THE COURT: You do not believe that any further deliberations would result in resolution of that count?

FOREPERSON: We — nobody's budging.

THE COURT: All right. And so what I would need you to do — we are going to take the verdict on all other counts. As to the count on Devin Washington that will be handled separately as to count 2. But I need for you to sign the verdict, make sure that's the verdict that y'all have agreed to for the other counts.

FOREPERSON: Yes. Do you need to know what exactly —

THE COURT: I'm going to ask for the verdict in just a second, but it has to be filled in and signed and dated by you as foreperson. And if y'all need to go — if y'all need to go back out and complete some paperwork, that's fine.

I need to ask you some questions. Madame foreperson, can you stand where you are. Have you reached a verdict?

7

FOREPERSON: We have.

THE COURT: Was it unanimous as to all of the counts other than the ones that you have told me —

FOREPERSON: We have.

THE COURT: — were deadlocked? Has the verdict form been filled in, signed, and dated by you.

FOREPERSON: It has.

THE COURT: Would you pass it to the bailiff, please.

THE CLERK: In the Superior Court of Richmond County in the case of the State of Georgia versus Marcus Washington and Devin Washington, indictment number 2012-RCCR-1600 for count 1, malice murder, we, the jury, find the defendant Marcus Washington not guilty. For count 1 malice murder, we, the jury, find the defendant Devin Washington, not guilty. For count 2, felony murder, we, the jury, find the defendant Marcus Washington not guilty. For count 3, possession of a firearm during the commission of a crime, we, the jury, find the defendant Marcus Antwan Washington guilty. For count 4, possession of a firearm during the commission of a crime, we, the jury, find the defendant Devin Washington guilty so found this 3rd day of May 2013, [(name of foreperson)], foreperson.

THE COURT: All right. Members of the jury I want to thank you for your service. This case has been tried exhaustively and you have heard and made a decision with regard to the evidence so your service is now concluded. I do need to ask do y'all wish to poll the jury as to counts 3 and 4?

Trial counsel for both Devin and Marcus declined to poll the jury on the verdict of guilt as to the possession-of-a-firearm counts.

Thereafter, the trial court gave the jurors final instructions as to their ability to now speak about the case and then discharged them from service. After all jurors had exited the courtroom, the trial court entered a mistrial as follows:

THE COURT: And for purposes of the record, based on the jury's inability to reach a verdict, I will declare a mistrial as to count 2 of the indictment as to Devin Washington. There was no objection. . . .

(Footnote omitted.) Id. In addition to the foregoing, we note that the text of Count 2 of the verdict form read: "For Count 2, felony murder, we the jury find the defendant Devin Washington [blank]." Handwritten in the blank immediately following Washington's name were the words "not guilty." Underneath the blank, "the jury foreperson also wrote "voluntary manslaughter?" A line is drawn through these handwritten words and, beside them, "mistrial declared" is written in what appears

9

to be different handwriting, along with the initials SBJ."[1] Washington I, 333 Ga. App. at 242. Although the jury was charged on the lesser included offense of voluntary manslaughter, the verdict form did not contain a pre-printed option for voluntary manslaughter, in large part because Washington's counsel argued against such a form.

(b) *Evidentiary Hearing on Remand.* On remand, the trial court conducted a hearing that included testimony by the original trial judge, court reporter, deputy clerk of court, prosecuting attorney, co-defendant's counsel, the jury foreperson, four trial jurors, and one alternate juror. Of particular relevance to the three areas of concern we stated in *Washington I*, the trial court found that the original trial judge did not review the verdict form prior to declaring a mistrial on Count 2 or before the verdict was published in open court;[2] that the original trial judge struck through the "not guilty" language on the verdict form; and that she did so only after the verdict had been published and the jury discharged. Furthermore, the trial court found that

---

[1] We noted that the original trial judge's initials were "SBJ." 333 Ga. App. at 242, n. 15.

[2] However, the deputy clerk of court who published the verdict in open court testified that she asked the original trial judge "what [she] was supposed to say for [Count 2]" in view of the jury's apparent disagreement. The original trial judge instructed her to "skip [Count 2] and that she would declare it a mistrial on the record." As noted infra, the mistrial was not entered on the record until after the verdict had been published and the jury discharged.

testimony by the jurors was "inconsistent"[3] and that their testimony "did not sustain or impeach the verdict in a collective sense." The trial court ultimately concluded that "a mistrial was declared due to a manifest necessity" and "was made without timely objection from [Washington]. . . ." Accordingly, the trial court denied Washington's plea in bar and held that Washington could be retried for felony murder.

Therefore, the following timeline is suggested by the hearing on remand and our review of the record: (1) during several hours of deliberation, the jury expressed its confusion over Count 2 through a series of notes to the original trial judge, culminating in an *Allen*[4] charge; (2) the jury then reported that it reached a verdict on every count against both defendants except Count 2 of Washington's indictment; (3)

---

[3] Specifically, the foreperson testified that "the jury was unanimous that [Washington] was not guilty of Felony Murder but they were not unanimous on the offense of voluntary manslaughter. . . ." Another juror corroborated the foreperson's testimony, stating that "there was a unanimous verdict that [Washington] was not guilty of Felony Murder." A third juror "first testified that there was no agreement as to Count Two and then testified that the jury agreed [Washington] was not guilty on Felony Murder but were hung on voluntary manslaughter." However, two additional jurors testified that "there was an agreement as to Count Two but [the juror] had no idea what the agreement was" and that the jury "was hung on Felony Murder." As a result, the trial court concluded that "the testimony was not consistent and does not clearly indicate that the jury intended to return a unanimous verdict of not guilty as to Felony Murder."

[4] See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896); *Humphreys v. State*, 287 Ga. 63, 79-82 (9) (694 SE2d 316) (2010).

11

in open court, the jury reported that it was hopelessly deadlocked on Count 2[5]; (4) the original trial judge did not see the verdict form prior to publishing the verdict; (5) the original trial judge instructed the deputy clerk of court to publish the verdict with the exception of Count 2; (6) the verdict, absent Count 2, was published; (7) the original trial judge discharged the jury; (8) without having seen the verdict form, the original trial judge declared a mistrial as to Count 2; and (9) at some point, after the verdict had been published and the jury discharged, the original trial judge struck through the jury's handwritten statements "not guilty" and "voluntary manslaughter?" We therefore follow this timeline to facilitate our analysis.

(c) *Review of Mistrial as to Count 2.* While this case suffers from several errors, one primary error - the original trial judge's failure to review the verdict form prior to publishing the verdict - so affected Washington's trial that a retrial is mandated.

(i) *Mistrial.* "[W]hether to declare a mistrial is in the discretion of the trial court and will not be disturbed on appeal unless 'it is apparent that a mistrial is essential to the preservation of the right to a fair trial.'" *Hogan v. State*, 330 Ga. App. 596, 602

---

[5] At no time did the jury indicate the actual charges upon which it was deadlocked.

(4) (768 SE2d 779) (2015). However, "[a] motion for mistrial, by its very nature, *seeks to end the trial proceedings before a verdict is rendered* in order to ensure that the defendant may receive a fair trial." (Emphasis added.) *State v. Sumlin*, 281 Ga. 183, 184 (1) (637 SE2d 36) (2006). As a result, "[o]nce the jury returns its verdict, the trial has ended and the time for granting a mistrial has passed." Id. (citing *State v. Archie*, 230 Ga. App. 253, n. 1 (495 SE2d 581) (1998) ("Clearly, a trial court cannot grant a mistrial after a verdict has been returned."); *State v. Jorgensen*, 181 Ga. App. 502, 503 (353 SE2d 9) (1987) ("A trial court cannot grant a mistrial after verdict.")). Accordingly, if it is to be declared at all, a mistrial must be declared prior to the return of a verdict.

> Retrial of a criminal defendant after a mistrial caused by the inability of the jury to reach a verdict does not constitute double jeopardy where there is manifest necessity for declaring the mistrial. *Where the jury is hopelessly deadlocked, this constitutes manifest necessity for declaring a mistrial.*

(Emphasis added.) *Leonard v. State*, 275 Ga. App. 667, 668 (621 SE2d 599) (2005). "The determination as to whether the jury is in fact hopelessly deadlocked is a matter somewhat in the discretion of the trial court." Id. at 668-669. See also *Honester v.*

13

*State*, 336 Ga. App. 166 (784 SE2d 30) (2016); *Thornton v. State*, 145 Ga. App. 793, 794 (245 SE2d 22) (1978).

> That discretion, however, is not unbridled, and it must be exercised carefully, particularly where the trial court is declaring a mistrial . . . sua sponte. . . . The careful exercise of its discretion, in turn, requires the trial court to take certain steps before concluding that the jury is hopelessly deadlocked and that a mistrial is necessary. Given the severe consequences of ordering a mistrial without the accused's consent, it is highly important that the trial court undertake a consideration of alternative remedies before declaring a mistrial based on a jury's alleged inability to reach a verdict. Accordingly, *a trial court may not allow itself to be bound by a jury's pronouncement that it is hopelessly deadlocked.*

(Citations and punctuation omitted; emphasis added.) *Honester*, 336 Ga. App. at 170 (citing *Sears v. State*, 270 Ga. 834, 838 (1) (514 SE2d 426) (1999).

At the outset, we note that the trial transcript is devoid of any discussion concerning a mistrial prior to publication of the verdict.[6] However, the original trial

---

[6] Although the original trial judge testified that, after receiving a note from the foreperson that the jury was hopelessly deadlocked, she "verbally pronounced that there would be a mistrial declared[,]" the trial transcript contains no record of such a pronouncement. A similar statement by the original trial judge that "we had declared a mistrial as to count two" is again unsupported by the trial transcript. Finally, the original trial judge stated that she consulted with counsel concerning the decision to declare a mistrial as to Count 2, but no such conversations appear in the

14

judge was well aware that the jury struggled with reaching a verdict on Count 2. For example, following questions by the jury, the original trial judge recharged the jury on malice murder, felony murder, voluntary manslaughter, aggravated assault, and mutual combat. Thereafter, the jury asked if it could "apply voluntary manslaughter instead of felony murder[.]" In response, the original trial judge charged the jury that if it found the defendants not guilty of felony murder, the jury "would be authorized to determine whether [each defendant is] guilty of the lesser included offense of voluntary manslaughter."[7] Two more notes revealed that the jury could not reach an agreement as to Count 2 for either defendant. The jury's next note stated that "[w]e are not all in agreement on Count 2 for Devin Washington." Thereafter, the jury's penultimate note to the original trial judge outlined the number of jurors that agreed on each count against both defendants; the note revealed an eleven-to-one split on

---

trial transcript. Nor does the trial transcript contain any notation that an unreported bench conference occurred during the discussion of the verdict. In fact, the original trial judge testified that there were no conversations with counsel or with court personnel that were not included in the record and that court personnel did not voice any concern concerning reading the verdict as presented. However, both the prosecuting attorney and the co-defendant's counsel recalled that the original trial judge stated she would declare a mistrial as to Count 2 on Washington.

[7] This instruction had also been given as part of the original trial judge's jury charge.

Count 2 against Washington, but not in which direction the eleven were leaning or which charges were at issue. Finally, the jury notified the original trial judge that "[w]e have exhausted all attempts to come to a unanimous decision on Count 2 for Devin Washington."

When the jury returned to the courtroom some ten hours after deliberations began, the jury foreperson confirmed that "a unanimous verdict [had] been reached on all counts with the exception of count 2 as to Devin Washington"; that the jury was "hopelessly deadlocked as to that count as to Devin Washington"; and that they did not believe "that any further deliberations would result in resolution of that count[.]"[8] As a result, the original trial judge stated that she would "take the verdict on all of the other counts[;] [a]s to the count on Devin Washington that will be handled separately as to count 2."[9] The verdict as to Counts 1 and 3 was published

_____

[8] At that juncture, based upon the information then in its possession, the original trial judge would likely have been authorized to declare a mistrial as to Count 2. See *Leonard*, 275 Ga. App. at 669.

[9] Immediately prior to the publication of the verdict, the jury confirmed that it had reached a verdict, that the verdict was unanimous "as to all of the counts other than the ones that . . . were deadlocked[,]" and that the verdict form had been completed by the foreperson.

16

and the jury discharged prior to the original trial judge's decision to declare a mistrial as to Count 2.

(ii) *Review of the Verdict Form*. "[I]t is the duty of the trial court not only to tell the jury what the law is, but to insist that they apply it and either render a verdict on some issue submitted or else make a mistrial." *Brooks v. State*, 311 Ga. App. 857, 860 (2) (717 SE2d 490) (2011) (citing *State v. Freeman*, 264 Ga. 276, 277 (444 SE2d 80) (1994)). See also *Washington I*, 333 Ga. App. at 247 (1). To that end, the proper procedure in handling a verdict form

> is for the trial court and counsel to review the verdict prior to its publication in open court, and if the verdict is not proper in that it finds the defendant guilty of an offense with regard to which the trial court did not instruct the jury, the trial court should return the jury for further deliberation with direction to return a verdict within the range of the instructions originally given to it.

*Freeman*, 264 Ga. at 278. Here, the trial court received multiple signals from the jury that it was deadlocked on Count 2 of the indictment. One of the jury's notes asked whether it could "apply voluntary manslaughter instead of felony murder[.]"[10] Five different notes from the jury indicated that it could not reach a verdict on Count 2.

---

[10] See fn. 5, supra.

17

When the jury indicated in open court that it had reached a verdict on every count except Count 2 against Washington, the foreperson passed the verdict to a bailiff, who then presented it to the original trial judge. However, the original trial judge only viewed the verdict form from a few feet away to verify that it had been dated and signed.[11] Of particular concern, the original trial judge testified that she "saw there was something written [on the verdict form], but I could not have told you what it was."

The original trial judge's failure to review the verdict form was error. "Since verdicts acquire their legality from return and publication, there was no verdict in this case until it was received and published in open court." (Citation and punctuation omitted.) *Green v. State*, 208 Ga. App. 1, 2 (1) (429 SE2d 694) (1993). As a result, the jury's notes that it had deadlocked were not controlling once it returned its verdict. See *State v. Lane*, 218 Ga. App. 126, 127-128 (460 SE2d 550) (1995) (jury's notes that it acquitted defendant of murder, prior to returning verdict of guilty, were insufficient to impeach verdict). See also *Honester*, 336 Ga. App. at 170. Had the original trial judge viewed the verdict form more carefully, the fact that the jury

---

[11] Nor did the prosecuting attorney or Washington's defense counsel see the verdict form prior to publication. The original trial judge testified that she did not permit counsel to review the verdict form as a matter of practice.

18

returned a verdict of not guilty as to felony murder, when it previously reported that it was deadlocked on Count 2 (felony murder), would have become evident. It is also likely that the judge would have noticed the handwritten words, "voluntary manslaughter?" Such a verdict would have triggered a number of options for the original trial court, including: (1) questioning the foreperson more directly concerning the verdict to eliminate any confusion; (2) polling the jurors to learn the truth of their verdict before deciding whether to declare a mistrial; or (3) requiring the jury to continue their deliberations and present a more clear verdict. See *Honester*, 336 Ga. App. at 171; *Leonard*, 275 Ga. App. at 669; *Thornton*, 145 Ga. App. at 795. None of these measures were taken.

Moreover, upon the trial court's ultimate review of the jury verdict after the jury had been discharged, none of the remedial options to clarify the verdict could have been exercised. "[W]hen an ambiguous verdict is returned by a jury, the trial court may refuse to accept the verdict and require the jury to continue its deliberations." (Punctuation omitted.) *Ingram v. State*, 290 Ga. 500, 503 (2) (722 SE2d 714) (2012) (trial court refused to accept verdict of guilty on both felony murder and voluntary manslaughter). See also *Kimmel v. State*, 261 Ga. 332, 334 (2) (404 SE2d 436) (1991) (trial court authorized to require further deliberations when

19

jury returned verdict of "undecided"); *Robinson v. State*, 282 Ga. App. 214, 215 (638 SE2d 370) (2006) (trial court authorized to require further deliberations when jury initially returned verdict of "guilty with reasonable doubt"). However, "after [a verdict] has been received, recorded, and the jury dispersed, it may not be amended in matter of substance, either by what the jurors say they intended to find or otherwise." OCGA § 17-9-40. In such a circumstance, "a defendant is entitled to the benefit of the doubt in the construction of an ambiguous verdict[.]" *Washington I*, 333 Ga. App. at 246 (1) (citing *Lindsey v. State*, 262 Ga. 665, 666 (1) (424 SE2d 616) (1993)).

Any corrective measures were lost in this case when the original trial judge did not see the verdict until after the verdict was published and the jury discharged. What remained, then, was a verdict form, completed by the jury, in which the jury apparently found Washington not guilty of felony murder after repeatedly communicating that it was unable to reach a verdict on Count 2. Clouding the verdict further is the "voluntary manslaughter?" language inserted on the verdict form suggesting the jury's inability to reach a verdict on that charge.[12] The jury's prior

---

[12] By receiving a proper jury instruction, the jury would have been authorized to return a verdict on voluntary manslaughter. See *Prater v. State*, 273 Ga. 477, 482 (5) (545 SE2d 864) (2001) (unless a jury is charged on a particular crime, no verdict

communications do not supplant their verdict and, in this instance, the jury's notes were sufficient to reinforce the original trial judge's duty to review the verdict form prior to publication. Instead, the original trial judge never reviewed the jury's verdict until it was too late to seek clarification from the jury. Similarly, the trial court was not authorized to strike through "not guilty" on the verdict form after the jury had been dispersed. See OCGA § 17-9-40; *Newsome v. State*, 323 Ga. App. 15, 17 (747 SE2d 99) (2013). Accordingly, "[b]ecause the trial court in this case did not so intervene before the dismissal of the jury, a new trial is authorized." *Newsome*, 323 Ga. App. at 17 (citing *Brooks*, 311 Ga. App. at 860 (2)).

(iii) In sum, we conclude that the original trial court did not abuse its discretion by declaring a mistrial as to the lesser included offense of voluntary manslaughter. The jury's notes, coupled with the verdict form it actually returned, indicate that it was unable to reach a unanimous verdict on that offense. See *Leonard*, 275 Ga. App. at 668. However, as to felony murder, we conclude that the trial court abused its discretion by declaring a mistrial as to felony murder because it failed to review the jury's verdict. See *Honester*, 336 Ga. App. at 171; *Newsome*, 323 Ga. App. at 17. Although the jury's notes reflected confusion and an inability to reach a verdict, the

may be rendered on that crime).

21

verdict form clearly stated that Washington was "not guilty" of felony murder. See *Lane*, 218 Ga. App. at 127-128; *Green*, 208 Ga. App. at 2 (1). Stated differently, there was no manifest necessity for a mistrial as to felony murder in view of the jury's verdict. Furthermore, once the verdict was returned, it follows that the original trial judge was without authority to modify or attempt to construe the jury's verdict in a certain light. See OCGA § 17-9-40. At worst, the verdict was ambiguous, requiring that Washington be given the benefit of the doubt. See *Washington I*, 333 Ga. App. at 246 (1); *Lindsey*, 262 Ga. at 666 (1). In either instance, the trial court erred by striking the words "not guilty" on Washington's verdict for felony murder and the trial court on remand abused its discretion by denying Washington's plea in bar as to felony murder. See, e.g., *Jorgensen*, 181 Ga. App. at 503 (trial court had "no authority to grant a mistrial as to proceedings that have previously terminated in a jury verdict of acquittal as to that offense."). Accordingly, we reverse and remand the case to the trial court for a new trial as to voluntary manslaughter and with direction to enter a judgment of acquittal as to felony murder.

3. In a related enumeration, Washington contends that a retrial as to felony murder would violate his constitutional protection against double jeopardy. In view of our discussion in Division 2, supra, we agree. As a result, Washington may not be

22

retried for the offense of felony murder. See, e.g., *Jorgensen*, 181 Ga. App. at 503. However, the State may retry Washington on the lesser included offense of voluntary manslaughter if it so elects. See *Archie*, 230 Ga. App. at 255 ("the acquittal on the indicted offense of [felony] murder would not bar retrial on the lesser included unindicted offense of voluntary manslaughter[.]").

4. Washington next argues that the trial court erred in admitting evidence of prior bad acts between Washington and co-defendant Marcus Washington. We need not consider this enumeration because, as in *Washington I*, Washington

> has failed to identify precisely which evidence he now challenges or show how he was prejudiced by any such evidence. "It is not this [c]ourt's job to cull the record on behalf of the [appellant] to find alleged errors." *Maxwell v. State*, 290 Ga. 574, 575 (2) (722 SE2d 763) (2012) (citation omitted). Moreover, we will not disturb a trial court's determination that such evidence is admissible absent an abuse of discretion. *Joiner v. State*, 265 Ga. App. 395, 397 (2) (593 SE2d 936) (2004).

333 Ga. App. at 256 (McFadden, J., dissenting). Accordingly, Washington has again failed to demonstrate reversible error. See, e.g., *Gordon v. State*, 327 Ga. App. 774, 781 (5) (a) (761 SE2d 169) (2014).

5. Washington also asserts that the trial court erroneously failed to sever his trial from his co-defendant's trial because their defenses were antagonistic. Because Washington's co-defendant was acquitted of malice murder and felony murder and cannot be retried, and because Washington may only be retried on the lesser included offense of voluntary manslaughter, this matter is unlikely to recur in Washington's retrial. As a result, we need not consider Washington's argument. See, e.g., *Sales v. State*, 296 Ga. 538, 541 (2) (b) (769 SE2d 374) (2015).

6. Finally, Washington argues that the trial court erred when it prevented Washington from calling two jurors as witnesses, admitting their affidavits into evidence, or otherwise making an offer of proof during his double jeopardy hearing prior to our decision in *Washington I* and the ensuing remand. As a threshold matter, Washington did not raise this enumeration of error in his original appeal to this Court.[13] However, regardless of whether the original trial court's ruling was error or whether the ground is now properly before us, it has been rendered moot because the trial court cured any alleged error on remand by admitting both affidavit and oral

---

[13] Indeed, we noted in *Washington I* that Washington did not "contend that the trial court erred by disallowing the testimony or affidavits of jurors. . . ." 333 Ga. App. at 244. Accordingly, the enumeration of error appears to be merely an attempt to generate an argument based upon our prior opinion.

24

testimony of the jurors during the remand hearing. See generally *Mincey v. State*, 251 Ga. 255, 258 (2) (304 SE2d 882) (1983) (trial court's refusal to conduct evidentiary hearing "could be cured by a remand for an evidentiary hearing"); *Dryden v. State*, 316 Ga. App. 70, 74 (3) (b) (728 SE2d 245) (2012) (error concerning mutually exclusive verdict cured on remand).

*Judgment reversed and case remanded with direction. Doyle, C. J., concurs. Ray, J., concurs in judgment only..*