**SECOND DIVISION**
**MILLER, P. J.,**
**RICKMAN and REESE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**September 27, 2019**

# In the Court of Appeals of Georgia

A19A1009. PARKER v. THE STATE.

RICKMAN, Judge.

Following a mistrial granted over his objection during his trial for armed robbery and illegal firearm possession, Deandre Jamara Parker filed a plea in bar to prohibit a retrial, which the trial court denied. On appeal, Parker contends the trial court abused its discretion in granting the mistrial because the court failed to ask the jury if anyone was refusing to deliberate, as Parker requested, in an attempt to avoid granting a mistrial; the court therefore erred, he contends, by denying his plea in bar. For the reasons that follow, we affirm.

The record shows that over the course of a three-day trial, the State presented seven witnesses and the defense presented two. The parties rested on a Friday morning, and the jury began deliberating at about 3:30 p.m. After approximately two

hours, the jury asked to watch the lineup identification video, which the court allowed; at 5:42 p.m., the jury resumed deliberation. Shortly before 6:30 p.m., the jury sent a note indicating that it was deadlocked.[1] With the parties' consent, the court ordered the jury to continue deliberating. The jury immediately wrote another note, this time saying that the jury was split "11 to 1" in favor of not guilty[2] and that the person voting guilty was "not changing his mind." The court instructed the jury, "Again, I need you to continue to deliberate." The jury resumed deliberations but sent another note at about 7:15 p.m., which stated:

> There is at least one person on each side of the verdict who have said they will not change their minds. No additional review of the evidence or additional discussion will change their vote. We are confident that returning on Monday will not change that status.

---

[1] Although the first two jury notes are not in the record, the parties agree to their content, and the trial court quoted the remaining notes during the deliberations. See generally Court of Appeals Rule 25 (b) (1) ("Except as controverted, appellant's statement of facts may be accepted by this Court as true.").

[2] Although, here, the jury volunteered the division regarding guilt or innocence, we note that "[t]rial courts should not . . . inquire as to the nature of a jury's numerical division. And we encourage them to inform jurors not to reveal that information." (Citations and punctuation omitted.) *Sears v. State*, 270 Ga. 834, 839 (1), n. 1 (514 SE2d 426) (1999).

With the agreement of the parties, the court ordered the jury to return Monday morning to continue deliberations.

The jury resumed deliberations at 9:00 a.m. on Monday but sent another note at about 10:45 a.m., which stated, "There are jurors on each side who are unwilling to change their vote, and have stated will not change their vote." Parker requested an *Allen*[3] charge, but the State argued that, based on the language of the notes, members of the jury appeared to have shifted their positions from Friday; the State argued that an *Allen* charge, therefore, would be premature. The court agreed and ordered the jury to continue deliberating. An hour after a lunch break, the jury sent another note, which stated, "After more deliberation, we are still at an impasse with jurors on both sides who have made up their minds and have stated they will not be changing their minds." This time, the State requested an *Allen* charge.

In response, Parker moved that the court "inquire regarding deliberations to ensure that everybody is deliberating. . . during the process." The court and the State agreed that it appeared the jury was deliberating because the Monday notes referred to multiple jurors being on each side, showing that "[t]here's obviously been some change [since Friday] based on their deliberations." The court added that it did not

---

[3] See *Allen v. United States*, 164 U. S. 492 (17 SCt 154, 41 LE 528) (1896).

3

see anything in the notes that led it to believe that "someone has decided they're not even going to deliberate." Accordingly, the court refused to question the jury as Parker requested and instead gave the jury the *Allen* charge at about 2:40 p.m.[4]

Nevertheless, one hour later, the next note stated:

It will not be possible for us to reach a consensus. We have tried in good faith to bring all the jurors to a common understanding, but we have reached a place where the lines of communication have broken down and no progress is being made.

The State concluded that the jurors were at an impasse and requested a mistrial. Parker objected and requested that the jury continue deliberating. The court found

---

[4] Thus the jury was charged, among other things, to continue conscientiously deliberating:

It is nevertheless necessary for all of the jurors to examine the issues and the questions submitted to them with candor and fairness and with a proper regard for, and deference to, the opinion of each other. A proper regard for the judgment of others will greatly aid us in forming our own judgment. Each juror should listen to the arguments of other jurors with a disposition to be convinced by them. If the members of the jury differ in their view of the evidence, the difference of opinion should cause them all to scrutinize the evidence more closely and to reexamine the grounds of their opinion. Your duty is to decide the issues that have been submitted to you, if you can conscientiously do so.

that the jury notes made clear that further deliberation would be futile, and it declared a mistrial.

Thereafter, Parker moved that the court grant a plea of former jeopardy and dismiss the indictment on the ground that the mistrial was improper. The court denied the plea. In its order, the court noted that although it did not poll the jurors to determine whether additional deliberations would be helpful, it carefully considered other factors required by law. The court held that based on the five jury notes, "it was clear to the Court that the jury was exhausted." The court concluded that a manifest necessity existed for the declaration of a mistrial, and it denied Parker's plea in bar. Parker appeals.

"Under the Double Jeopardy Clauses of the United States and Georgia Constitutions, trial courts may declare a mistrial over the defendant's objection, without barring retrial, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for doing so." (Citation and punctuation omitted.) *Laguerre v. State*, 301 Ga. 122, 124 (799 SE2d 736) (2017). See also OCGA § 16-1-8 (a) (2) ("A prosecution is barred if the accused was formerly prosecuted for the same crime based upon the same material facts, if such former prosecution . . . [w]as terminated improperly after the jury was impaneled and sworn.

5

. . ."); 16-1-8 (e) (2) (C) (termination is not improper if the trial court finds it necessary because "[t]he jury is unable to agree upon a verdict"). Our Supreme Court has explained that "a mistrial is appropriate when there is a 'high degree of necessity.'" (Citation and punctuation omitted.) *Harvey v. State*, 296 Ga. 823, 831 (2) (a) (770 SE2d 840) (2015).

"The question of whether a jury is 'hopelessly deadlocked,' and thus the existence of manifest necessity for a mistrial, is within the discretion of the trial court." *Honester v. State*, 336 Ga. App. 166, 170 (784 SE2d 30) (2016). That discretion "is not unbridled," *Haynes v. State*, 245 Ga. 817, 819 (268 SE2d 325) (1980), and it must be exercised carefully, which "requires the trial court to take certain steps before concluding that the jury is hopelessly deadlocked and that a mistrial is necessary." *Honester*, 336 Ga. App. at 170. For example, in deciding whether to declare a mistrial or require further deliberation the trial court should: inquire of the jury whether additional time for deliberation would be helpful; consider whether the jury "is so exhausted that the minority might be induced to vote for a verdict which they otherwise would not support"; and consider the length and complexity of the trial and the length of the deliberations. *Thornton v. State*, 145 Ga.

6

App. 793, 794 (245 SE2d 22) (1978); see also *Hines v. State*, 320 Ga. App. 854, 867 (6), n. 13 (740 SE2d 786) (2013) (these steps are not mandatory).

In addition, "it is highly important that the trial court undertake a consideration of alternative remedies[5] before declaring a mistrial based on a jury's alleged inability to reach a verdict." (Citation and punctuation omitted.) *Honester*, 336 Ga. App. at 170; see also *Haynes*, 245 Ga. at 819 ("a consideration of alternative remedies is highly important"). Nevertheless, a court is not required to accept less drastic remedies if reasonable judges could differ about their use:

> [A]lthough trial courts should give careful, deliberate, and studious consideration to whether the circumstances demand a mistrial, with a keen eye toward other, less drastic, alternatives, a court's rejection of other alternatives is a proper exercise of the court's discretion — and not an abuse — if reasonable judges could differ about the proper disposition.

---

[5] Alternative remedies can include, but are not limited to, polling or questioning the jury about improper influence or whether the jurors are hopelessly deadlocked, taking a break in the proceedings, sending the jury home for the evening, admonishing the jurors to keep their deliberations civil and respectful, and admonishing or removing a specific juror if it can be determined that the person is responsible for creating a volatile environment. See generally *Meadows*, 303 Ga. 507, 514-515 (2) (c) (813 SE2d 350) (2018).

7

(Citation and punctuation omitted.) *Blake v. State*, 304 Ga. 747, 749 (2) (822 SE2d 207) (2018).

"Although the trial judge is not required to make explicit findings of manifest necessity nor to articulate on the record all the factors which informed the deliberate exercise of his discretion, the record must at least show that the trial court actually exercised its discretion." (Citation and punctuation omitted.) *Blake*, 304 Ga. at 749 (2). Finally, although the amount of scrutiny used to evaluate mistrial decisions varies according to the reason for the mistrial,[6] "great deference" is "accorded to decisions to grant a mistrial based on the judge's belief that the jury cannot reach a verdict." (Citation and punctuation omitted.) *Meadows v. State*, 303 Ga. 507, 512 (2) (813 SE2d 350) (2018).

Parker argues that the jury's notes strongly suggest that one or more jurors was refusing to deliberate and that the trial court therefore erred by refusing to question jurors on that point as Parker had requested. We conclude that under the circumstances, reasonable judges could differ about whether that action was necessary. The transcript shows that the court carefully considered the jury's progress

---

[6] See, e.g., *Arizona v. Washington*, 434 U. S. 497, 508 (11) (98 SCt 824, 54 LE2d 717) (1978) ("[T]he strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence.") (footnote omitted).

as reflected in the five notes that it sent before Parker asked the court to question the jury, which indicated that positions had changed slightly from Friday to Monday and that, therefore, the jurors were continuing to deliberate. The court even noted that the Monday afternoon message from the jury expressly stated that the jury had been deliberating. The court therefore had a reasonable basis to conclude that the notes did not indicate that any person was refusing to deliberate. In addition, the court clearly exercised discretion, in part by carefully considering when to give the *Allen* charge, finding it premature to do so Monday morning, and by repeatedly considering the length of the case and how long the jury had been deliberating when making its decision in what the record shows was not a complex case.[7] After receiving the final note, the court considered the apparent futility of going forward.

It is true that "a trial court may not allow itself to be bound by a jury's pronouncement that it is hopelessly deadlocked," and that possible investigatory steps include "polling the jurors individually or questioning them as a group to determine

---

[7] The victim testified that she was robbed at a bus stop by a man in a car who had a black handgun. The victim described the robber to the police and later identified Parker from a photo lineup and at trial as the robber. The victim also gave officers a description of the car and a partial license tag number, which led officers to stop Parker driving a car matching the description and partial tag number over nine days later. A search revealed a loaded black pistol in the car, and Parker was arrested.

how close they are to an agreement and/or whether one or more jurors is refusing to deliberate." *Honester*, 336 Ga. App. at 170. But such a step is not mandatory. See generallty *Hines*, 320 Ga. App. at 867 (6), n. 13.

In sum, applying the great-deference standard, we conclude that the trial court did not abuse its discretion in granting the mistrial. See, e.g., *Johnson v. State*, 256 Ga. App. 730, 732 (2) (569 SE2d 625) (2002) ("Based on the relative brevity of the trial and simplicity of the issues, the length of the deliberations, and the measures taken by the trial court to evaluate the jury's stated inability to agree on a verdict (including the giving of the *Allen* charge), we hold the trial court did not abuse its discretion in declaring a mistrial on the basis of manifest necessity.") Compare *Carman v. State*, 304 Ga. 21, 27 (2) (a) (815 SE2d 860) (2018) (mistrial cannot be condoned if the trial court "acts for reasons completely unrelated to the trial problem which purports to be the basis for the mistrial ruling" or otherwise "acts irrationally or irresponsibly") (citation and punctuation omitted).

*Judgment affirmed. Miller, P. J., and Reese, J., concur.*